# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SKYLINE POTATO COMPANY, INC.,
A Colorado Corporation,

       Plaintiff,

vs.                                       No. CIV 10-0698 JB/RHS

TAN-O-ON MARKETING, INC. d/b/a TMI;
a Colorado corporation with a principal place
of business in New Mexico; HI-LAND POTATO
COMPANY, INC., a Colorado corporation;
GERALD R. ANDERSON, in his individual
capacity and As Director/Shareholder of Tan-O-On
Marketing Inc.; JULIE A. ANDERSON, in her
individual capacity and as Director/Shareholder
of Tan-O-On Marketing Inc.; and CARL WORLEY,
in his individual capacity, as Director/Shareholder of
Tan-O-On Marketing Inc., and as Director/Shareholder
Hi Land Potato Company,

       Defendants,

and

FOLSOM FARM CORPORATION,
POTANDON PRODUCE, L.L.C.,
MART PRODUCE CORPORATION,
BILLINGSLEY PRODUCE SALES,
INC., ALSUM PRODUCE, INC., and
PETERSON BROS. RIVER VALLEY
FARMS, INC.,

       Intervening Plaintiffs,

vs.

TAN-O-ON MARKETING, INC. d/b/a TMI, and
HI-LAND POTATO COMPANY, INC.,

       Defendants,

and

TAN-O-ON MARKETING, INC. d/b/a TMI;
GERALD R. ANDERSON, JULIE A. ANDERSON,

       Third-Party Plaintiffs,

vs.

HI-LAND POTATO COMPANY, INC.;
and CARL WORLEY, RPE, INC.
and RUSSELL WYSOCKI

       Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Tan-O-On Marketing, Inc.'s Motion for Leave to File Response to Motion to Bifurcate out of Time, filed April 13, 2012 (Doc. 153)("Motion for Leave to File Response"); and (ii) the Third-Party Defendants, RPE, Inc., and Russell Wysocki's Motion to Bifurcate, filed March 8, 2012 (Doc. 128)("Motion to Bifurcate"). The Court held a hearing on April 13, 2012. The primary issues are: (i) whether the Court should grant the request of Defendants Tan-O-On Marketing, Inc., Gerald Anderson, and Julie Anderson (the "Tan-O-On Parties") for leave to file a response to the Motion to Bifurcate; and (ii) whether the Court should bifurcate the claims that the Tan-O-On Parties have asserted against Third-Party Defendants RPE, Inc. and Russell Wysocki (the "RPE, Inc. Parties") from all the other claims asserted in this case. Because no parties oppose the Motion for Leave to File Response, and because the RPE, Inc. Parties agree that the issue whether permitting a response to the Motion to Bifurcate is appropriate is now effectively moot, the Court will grant the Motion for Leave to File Response. The Court concludes that bifurcation is improper, because a single trial will be simpler, multiple trials will be an inefficient use of judicial resources, there will be a significant overlap in evidence among the claims, and a single trial will not prejudice the parties. Thus, the Court will deny the

Motion to Bifurcate.

## FACTUAL BACKGROUND

There have been three sets of claims asserted.  First, Plaintiff Skyline Potato Company, Inc. alleges violations of the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t ("PACA"), breach of contract, and fraud against the Tan-O-On Parties and Defendants Hi-Land Potato Company and Carl Worley (the "Hi-Land Potato Parties").  First Amended Petition and Complaint, Prayer for Declaratory Relief and Piercing of the Corporate Veil at 2-18, filed October 11, 2011 (Doc. 73)("First Amended Complaint").  Next, the Intervening Plaintiffs[1] also assert claims of PACA violations, breach of contract, and fraud against Tan-O-On Marketing and Hi-Land Potato.  See Complaint in Intervention at 3, filed July 8, 2011 (Doc. 60).  Lastly, the Tan-O-On Parties assert claims of fraud and unjust enrichment against the Hi-Land Potato Parties and the RPE, Inc. Parties.  See Third Party Complaint for Fraud and Theft of Trade Secrets and Unjust Enrichment at 2-10, filed October 14, 2011 (Doc. 72)("Third Party Complaint").

1.    **Facts Underlying Skyline Potato's Claims Against the Defendants.**

The Court recites the facts in this section in the light most favorable to Skyline Potato. Skyline Potato and the Defendants were "engaged in the commercial pursuit of wholesale distribution of potatoes and other perishable produce."  First Amended Complaint ¶ 24, at 5. Skyline Potato sold and delivered produce to Tan-O-On Marketing, Inc. and/or Hi-Land Potato Company on behalf of Tan-O-On Marketing; approximately $81,282.39 of what Tan-O-On Marketing and/or Hi-Land Potato owe to Skyline Potato remains unpaid.  See First Amended

---

[1]The Intervening Plaintiffs include the following parties: (i) Folson Farm Corporation; (ii) Potandon Produce, L.L.C.; (iii) Mart Produce Corporation; (iv) Billingsley Produce Sales, Inc.; (v) Alsum Produce, Inc.; and (vi) Peterson Bros. River Valley Farms, Inc.

Complaint ¶ 25-26, at 5.  Tan-O-On Marketing and/or Hi-Land Potato then caused delivery of this produce to various buyers.  See First Amended Complaint ¶ 26, at 5.  Skyline Potato "made timely demand for payment from Tan-O-On, Hi-Land and the Individual Defendants."   First Amended Complaint ¶ 27, at 5.  Additionally, Skyline Potato made the Defendants[2] aware of its intention to preserve trust benefits under PACA by including statutory-trust language on the invoices that it sent to Tan-O-On Marketing.  See First Amended Complaint ¶ 28, at 6.  Despite Skyline Potato's timely demands and notice reserving PACA trust benefits, the "defendants failed to cure the outstanding balance due and owing" to Skyline Potato.  First Amended Complaint ¶ 29, at 6.

 "On June 15, 2010, the Secretary of Agriculture of the United States Department of Agriculture issued a reparation Order and Award which provided that Tan-O-On is indebted to the Plaintiffs in the amount of $81,282.39, plus PACA filing fees, and interest."  First Amended Complaint ¶ 30, at 6.  In February 2006, the Andersons entered an agreement where they would sell Tan-O-On Marketing shares to Shannon Casey and Shawna Casey.[3]  See First Amended Complaint ¶ 33, at 6.  In January 2007, the Andersons entered into an "Addendum to Stock Purchase Agreement" to maintain a vested interest in the management of Tan-O-On Marketing until payment in full of the amounts set forth in the original purchase agreement for shares.  See First Amended Complaint ¶ 34, at 6-7.

---

 [2]The Defendants include the following parties: (i) Tan-O-On Marketing, Inc.; (ii) Hi-Land Potato Company, Inc.; (iii) Gerald R. Anderson; (iv) Julie A. Anderson; and (v) Carl Worley.

 [3]According to Skyline Potato's pleadings, Shannon Casey "was an officer and shareholder of Tan-O-On and Hi Land," who Skyline Potato did not name as a defendant in this case because of her "being discharged under a chapter 7 bankruptcy case."  Amended Complaint ¶ 13, at 3-4. Similarly, Skyline Potato alleges that "Shawna Casey was an officer and shareholder of Tan-O-On and Hi Land" who was "discharged under a chapter 7 bankruptcy case."  Amended Complaint ¶ 14, at 4.

2.      <u>**Facts Underlying the Intervening Plaintiffs' Claims**</u>.

The Court recites the facts in this section in the light most favorable to the Intervening Plaintiffs.  The Intervening Plaintiffs sold to Tan-O-On Marketing produce in a amount totaling $373,159.40 between September 23, 2009 and December 28, 2009.  <u>See</u> Complaint in Intervention ¶ 8, at 4.  "Pursuant to PACA, at the time Tan-O-On received the produce, it became a trustee of the PACA trust for the benefit of Intervening Plaintiffs in the amount of $373,159.40."  Complaint in Intervention ¶ 10, at 5.  Assets subject to the applicable PACA trust include: (i) Tan-O-On Marketing's inventories of produce, food, or derivative products; (ii) accounts receivable; (iii) proceeds of sales; and (iv) other assets commingled with proceeds.  <u>See</u> Complaint in Intervention ¶ 11, at 5.  Tan-O-On Marketing is "in possession, custody, and control of PACA trust assets that must be held for the benefit of Intervening Plaintiffs."  Complaint in Intervention ¶ 18, at 6.  The Intervening Plaintiffs gave notice to Tan-O-On Marketing of their intent to preserve PACA trust benefits "by including the statutory language required . . . on each of their invoices, and by sending those invoices to [Tan-O-On Marketing]."  Complaint in Intervention ¶ 13, at 5.  The Intervening Plaintiffs never received payment for the produce sold and delivered to Tan-O-On Marketing.  <u>See</u> Complaint in Intervention ¶ 14, at 6.  "As a result of [Tan-O-On Marketing's] failure to pay promptly, the Intervening Plaintiffs have suffered damages."  Complaint in Intervention ¶ 33, at 9.

This exchange between the Intervening Plaintiffs and Tan-O-On Marketing established contracts, which were later breached, causing damages in the amount of $373,159.40 to the Intervening Plaintiffs.  <u>See</u> Complaint in Intervention ¶¶ 36, 38, at 9-10.  Furthermore, the "Intervening Plaintiffs believe that PACA Trust Assets were transferred by [Tan-O-On Marketing] to Hi-Land" which constitutes a breach of the PACA trust.  Complaint in Intervention ¶¶ 41-42, at

10.   Tan-O-On Marketing's receipt and retention of trust assets from Hi-Land Potato caused damages to the Intervening Plaintiffs.  See Complaint in Intervention ¶ 44, at 10.  "These transfers were fraudulent transfers as proscribed by New Mexico's Uniform Transfer Act, N.M. Stat. Ann.. § 56-10-14 *et. seq.*"  Complaint in Intervention ¶ 52, at 12.  The transfers are fraudulent, because the transfer occurred after claims of the Intervening Plaintiffs arose, and "these transfers were made to or for the benefit of insiders of [Tan-O-On Marketing] without consideration," and "Tan-O-On Marketing was insolvent at the time of these transfers."  Complaint in Intervention ¶¶ 48-50, at 11. Because Hi-Land Potato used the PACA trust assets it received from Tan-O-On Marketing for its own benefit, Hi-Land Potato "holds the assets in constructive trust as trustee for the benefit of Intervening Plaintiffs."  Complaint in Intervention ¶ 57, at 13.  "Hi-Land's continued conversion and use of such assets and/or proceeds will result in unjust enrichment to Hi-Land and the detriment of Intervening Plaintiffs."  Complaint in Intervention ¶ 61, at 14.

> **3.**     **Facts Underlying the Tan-O-On Parties' Third-Party Claims Against the Third-Party Defendants.**

The Court recites the facts in this section in the light most favorable to the Tan-O-On Parties. Tan-O-On Marketing engaged in interstate commerce regarding the sale of produce with Skyline Potato and the Intervening Plaintiffs.  See Third Party Complaint ¶¶ 12-13, at 3.  "On June 15, 2010, the Secretary of Agriculture of the United States Department of Agriculture issued a reparation Order and Award which provided that Tan-O-On Marketing is indebted to Skyline Potato in the amount of $81,282.39 . . . ."  Third Party Complaint ¶ 14, at 3.  In February 2006, "Gerald R. Anderson and Julie Anderson entered a stock purchase agreement whereby they would sell shares of Tan-O-On Marketing, Inc. to Shawna Casey and Shannon Casey."  Third Party Complaint ¶ 15, at 4.  The following year, the Andersons entered into an "Addendum to Stock Purchase Agreement,"

where they would continue to have a vested interest in the management of Tan-O-On Marketing until the amounts under the original stock purchase agreement were paid.  Third Party Complaint ¶ 16, at 4.  Before the Caseys' purchase of Tan-O-On Marketing, the company "had a long standing reputation in the industry for prompt payments to all growers of potatoes immediately upon receipt of payments for potatoes delivered by Tan-O-On Marketing."  Third Party Complaint ¶ 17, at 4.

In late 2009, Shannon Casey resigned from and closed Tan-O-On Marketing.  See Third Party Complaint ¶¶ 18, 20, at 5.  After closing Tan-O-On Marketing, the Caseys relocated to Monte Vista, Colorado -- where Hi-Land Potato locates its business.  See Third Party Complaint ¶ 20, at 5.  Although the Caseys represented that they had abandoned their positions with Tan-O-On Marketing, they later established a new bank account for the company in Monte Vista.  See Third Party Complaint ¶ 21, at 5-6.  The Caseys deposited approximately $1.8 million of Tan-O-On Marketing's receivables into the new account and then paid those proceeds to Hi-Land Potato instead of Tan-O-On Marketing's PACA trust creditors -- such as Skyline Potato and the Intervening Plaintiffs.  See Third Party Complaint ¶ 21, at 6.  Based on Tan-O-On Marketing's and the Andersons' reputation, Skyline Potato and the Intervening Plaintiffs did not take legal action until Tan-O-On Marketing officially shut down, and until after the transfer of the company's assets to Hi-Land Potato and Worley.  See Third Party Complaint ¶ 24, at 7.  "In March 2010, the Caseys filed a petition for relief und Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Mexico."  Third Party Complaint ¶ 23, at 6.  "This [conduct] was [all] part of a scheme to defraud [Tan-O-On Marketing] and Gerald R. Anderson and Julie Anderson and was intentional and known . . . ."  Third Party Complaint ¶ 24, at 7.  As a result of the actions of Hi-Land Potato, the Andersons lost money on the sale of Tan-O-On Marketing, their reputation in the

industry, and G. Anderson's PACA broker's license.[4]  See Third Party Complaint ¶ 16, at 4.

Before January 2010, Hi-Land Potato did not broker sales of potatoes, because it relied on Tan-O-On Marketing to sell its product.  See Third Party Complaint ¶ 22, at 6.  At this time, Shawna Casey established a sales office for Hi-Land Potato and began selling Hi-Land Potato's produce directly to customers.  See Third Party Complaint ¶ 20, at 5.  Additionally, at the time the Shannon Casey shut down Tan-O-On Marketing, the company was the largest supplier of potatoes to The Kroger Co., a national grocery chain, in the country.  See Third Party Complaint ¶ 18, at 5.  Kroger Co. does not transact business with a potato broker unless the broker has a Kroger Co. vendor number.  See Third Party Complaint ¶ 18, at 5.  Hi-Land Potato transferred customer relationships, monthly orders from Kroger Co., and other proprietary information, without authority, permission, or compensation to RPE, Inc.  See Third Party Complaint ¶ 25, at 7.  After the transfer of Tan-O-On Marketing assets to RPE, Inc., RPE, Inc. announced the opening of a Monte Vista sales division and hired Shannon Casey as the operation's director.  See Third Party Complaint ¶ 26, at 7.  RPE, Inc. now handles the sales of potatoes from Hi-Land Potato, including the sales relationship with Kroger Co.  See Third Party Complaint ¶ 27, at 7-8.  When Shannon Casey shut down Tan-O-On Marketing, neither Hi-Land Potato nor RPE, Inc. had a vendor number with Kroger Co.  See Third Party Complaint ¶ 18, at 5.  The transfer of Tan-O-On Marketing assets from Tan-O-On Marketing to Hi-Land Potato to RPE, Inc. constitutes a breach of the PACA trust and a fraudulent transfer, because Skyline Potato and the Intervening Plaintiffs remain uncompensated for their transactions with Tan-

---

[4]Under PACA, the United States Department of Agriculture requires that brokers dealing in the negotiation of contracts involving produce between a buyer and a seller be licenced to operate in the industry.  See 7 U.S.C. § 499c ("After December 10, 1930, no person shall at any time carry on the business of a commission merchant, dealer, or broker without a license valid and effective at such time.").

O-On Marketing.  See Third Party Complaint ¶¶ 28, 34, at 8-9.

## PROCEDURAL BACKGROUND

On July 23, 2010, Skyline Potato filed its Petition for Enforcement of USDA PACA Order and Award of Damages; Complaint for Violation of Federal Unfair Trade Practices Provision in PACA (7 U.S.C. § 499b), Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Money Owed on Open Account, and Prayer for Declaratory Relief and Piercing of the Corporate Veil against Defendants Tan-O-On Marketing, Inc., Hi-Land Potato, G. Anderson, J. Anderson, Mark Lounsbury, Bill Metz, and Carl Worley.  See Doc. 2 ("Original Complaint").  On July 8, 2011, the Intervening Plaintiffs filed their Complaint in Intervention against Tan-O-On Marketing and Hi-Land Potato.  See Doc. 60.  Against Tan-O-On Marketing, the Intervening Plaintiffs assert the following claims: (i) Count I -- Declaratory Relief Validating PACA Trust Claim (7 U.S.C. § 499e(c)(3) and (4)); (ii) Count II -- Enforcement of Payment from PACA Trust Assets (7 U.S.C. § 499e(c)(5));  (iii) Count III -- Violation of  PACA: Failure to Maintain PACA Trust Assets and Creation of Common Fund (7 U.S.C. § 499e(c)); (iv) Count IV -- Violation of PACA: Failure to Pay Promptly (7 U.S.C. § 499b(4)); and (v) Count V -- Breach of Contract.  See Complaint in Intervention at 4-9.  Against Hi-Land Potato, the Intervening Plaintiffs assert the following claims: (i) Count VI -- Conversion and Unlawful Retention of PACA Trust Assets; (ii) Count VII -- Fraudulent Transfer; (iii) Count VII --  Constructive Trust; and (iv) Count IX -- Unjust Enrichment. See Complaint in Intervention at 10-13. The Intervening Plaintiffs request: (i) a declaration that they hold valid trust claims under PACA;  (ii)  the creation of a common fund from which all beneficiaries may be paid; (iii) an injunction to prevent Tan-O-On Marketing from dissipating PACA trust assets; (iv) an order directing Hi-Land Potato to disgorge PACA-trust assets and transfer those amounts to the Intervening Plaintiffs; and (v) an order declaring that Hi-Land

Potato holds these amounts in a constructive trust for the benefit of Intervening Plaintiffs.  <u>See</u> Complaint in Intervention at 14-16.

On October 14, 2011 the Tan-O-On Parties filed their Third Party Complaint against the Hi-Land Potato Parties and the RPE, Inc. Parties.  <u>See</u> Doc. 72.  The Tan-O-On Parties assert the following claims: (i) Fraud; (ii) Unjust Enrichment; and (iii) Theft or Conversion of Trade Secrets and Corporate and Personal Assets. <u>See</u> Third Party Complaint at 3-10.

On October 21, 2011, Skyline Potato filed its First Amended Complaint.  <u>See</u> Doc. 73. Skyline Potato asserts the following counts against the Defendants: (i) Count I -- Enforcement of Order and Collection under the PACA Trust (7 U.S.C. § 499e); (ii) Count II -- Violation of PACA Unfair Business Conduct Provision (7 U.S.C. § 499b); (iii) Count III -- Breach of Written Contract; (iv) Count IV -- Breach of Implied Covenants of Good Faith and Fair Dealing; (v) Count V -- Quantum Meruit; (vi) Count VI -- Conversion and Unlawful Retention of Plaintiff's Property and PACA Trust Assets; (vii) Count VII -- Fraud; (viii) Count VIII -- Money Owed on Open Account; (ix) Count IX -- Violation of PACA: Failure to Maintain PACA Trust Assets and Creation of a Common Fund (7 U.S.C. § 499e(c)); (x) Count X -- Fraudulent Transfer; (xi) Count XI -- Constructive Trust; and (xii) Count XII -- Prayer for the Remedy of "Piercing of the Corporate Veil."  First Amended Complaint at 7-19.  Two of the forms of relief that Skyline Potato requests are: (i) a preliminary injunction precluding the continued operation of a business enterprise in violation of PACA; and (ii) the creation of a constructive trust to prevent the Defendants from dissipating assets in attempt to prevent Skyline Potato's recovery.  <u>See</u> First Amended Complaint at 20-21.

On March 8, 2012 the RPE, Inc. Parties filed their Motion to Bifurcate.  <u>See</u> Doc. 128.  The RPE, Inc. Parties move to bifurcate the trial of the claims that the Tan-O-On Parties have asserted

against them from the trial of all other claims in this case.  See Motion to Bifurcate at 2.  The RPE, Inc. Parties argue that Skyline Potato's claims against the Defendants are neither factually nor legally related to the Tan-O-On Parties' claims against the RPE, Inc. Parties, because the Tan-O-On Parties' claims are unrelated to PACA, and do not depend upon the resolution of claims between Skyline Potato and the other Defendants.  See Motion to Bifurcate at 4.  The RPE, Inc. Parties also argue that the PACA-related claims are sufficiently complex that additional discovery is warranted which, they urge, will result in additional delay of trial of the claims against them.  See Motion to Bifurcate at 5.  They argue that this result is "patently unfair to [the RPE, Inc. Parties], who will not benefit from, and who do not need to engage in, PACA-related discovery."  Motion to Bifurcate at 5.  The RPE, Inc. Parties assert that bifurcating the trials would be a benefit to the parties and would maintain the trier of fact's focus on the claims concerning each party.  See Motion to Bifurcate at 5.

On April 11, 2012, the Tan-O-On Parties filed the Tan-O-On Marketing, Inc. Response to RPE, Inc. Motion to Bifurcate.  See Doc. 151 ("Response to Motion to Bifurcate").  The Tan-O-On Parties argue that claims asserted against the RPE, Inc. Parties are related to the PACA-trust claims that form the basis of Skyline Potato's lawsuit.  See Response to Motion to Bifurcate at 2.  The Tan-O-On Parties contend that, if all PACA trust debts are not collected against Hi-Land Potato, then there will be a trust imposed that will cause the remaining PACA-trust debts to carry over to RPE, Inc.  See Response to Motion to Bifurcate at 2.  They assert that this trust would be imposed on all of the brokers' sales until all debts are paid.  See Response to Motion to Bifurcate at 2.  The Tan-O-On Parties further argue that Shannon Casey's activities and connection to Tan-O-On Marketing's PACA violations are essential evidence, as they relate to the claims against both the Hi-Land Potato Parties and the RPE, Inc Parties.  See Response to Motion to Bifurcate at 5.  The Tan-O-On Parties

contend that, if the Court grants the Motion to Bifurcate, the Court would have to hear the same evidence twice.  See Response to Motion to Bifurcate at 6-7.

On April 12, 2012, the RPE, Inc. Parties filed their Third-Party Defendants RPE, Inc. and Russell Wysocki's Reply in Support of Their Motion to Bifurcate.  See Doc. 152 ("Reply").  First, the RPE, Inc. Parties argue that there are no legal or factual commonalities between the claims that Skyline Potato and the Intervening Plaintiffs assert, and the claims that the Tan-O-On Parties assert against the RPE, Inc. Parties.  See Reply at 2.  Second, the RPE, Inc. Parties contend that the Court should grant the Motion to Bifurcate, because the Tan-O-On Parties' late filing of the response to the Motion to Bifurcate constitutes consent to grant the Motion to Bifurcate.  See Reply at 3.  The RPE, Inc. Parties argue that Shannon Casey's actions as president of Tan-O-On Marketing, as they relate to misappropriation of PACA trust assets, are legally immaterial to the claims brought against the RPE, Inc. Parties, because they are not vicariously liable for acts of an employee before employment.  See Reply at 4.  Finally, the RPE, Inc. Parties argue that the Tan-O-On Parties' assertion in their response brief that the RPE, Inc. Parties may be subject to a PACA-related trust is a new position that the Court should not consider.  See Reply at 4-5.  The RPE, Inc. Parties contend that the Court should not consider new positions, because: (i) it is not permissible for a party to assert a new theory of recovery at this stage of the proceedings; (ii) the new theory lacks a legal basis and factual similarity to those discussed in the authorities on which the Tan-O-On Parties rely; and (iii) the argument is frivolous, given that the Tan-O-On Parties cannot show a transactional connection between the RPE, Inc. Parties and any of the other parties involved in these proceedings. See Reply 5-7.

On April 13, 2012, the Tan-O-On Parties filed their Motion for Leave to File Response. See Doc. 153.  The Tan-O-On Parties' counsel indicates that a physical illness has been afflicting him

and has caused late filings.  See Motion for Leave to File Response at 1-2.  The Tan-O-On Parties

ask the Court for leave to file a response to the Motion to Bifurcate out of time.  See Motion for

Leave to File Response at 2.

At the hearing on April 13, 2012, the RPE, Inc. Parties and the Tan-O-On Parties argued

their positions on the Motion to Bifurcate.  During the RPE, Inc. Parties' argument, the Court

inquired as to the likely length of trial if no bifurcation occurred.  See Transcript of Hearing at

58:16-17 (taken April 13, 2012)(Court)("Tr.").[5]  The RPE, Inc. Parties responded that the likely

length of trial would be between three to five days, and noted that the length would largely depend

on which witnesses testify.  See Tr. 58:18-60:16 (Feuchter, Court).  The RPE, Inc. Parties then went

on to list likely witnesses that would appear at a non-bifurcated trial and at separate trials.  See Tr.

58:20-60:16 (Feuchter).  The list of witnesses that the RPE, Inc. Parties acknowledged would likely

appear twice if bifurcation occurred included: (i) Shannon Casey; (ii) Shawna Casey; (iii) Worley;

(iv) Wysocki; and (v) J. Anderson.  See Tr. 58:22-60:2 (Feuchter, Court).  The RPE, Inc. Parties

asserted that, at a non-bifurcated trial focusing on only the claims against them, additional Hi-Land

Potato and Kroger Co. employees would likely testify.  See Tr. 58:22-59:3 (Feuchter, Court).  The

Court then requested clarification on how the RPE, Inc. Parties would suffer prejudice if the Court

denied the Motion to Bifurcate.  See Tr. 60:24-61:2 (Court).  In response, the RPE, Inc. Parties

argued that much of Shannon Casey's testimony should be excluded under rule 403 of the Federal

Rules of Evidence as unfairly prejudicial to them and that bifurcation would prevent confusion of

the trier of fact.  See Tr. 60:3-14 (Feuchter).  The parties then clarified that there has been no jury

demand in this case and that the Court will likely be the trier of fact.  See Tr. 60:15-20 (Court,

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Feutcher, Bohnoff).  The parties then agreed that the RPE, Inc. Parties did not commit PACA trust

violations.  See Tr. 56:25-57:2 (Feutcher); id. 66:22-67:8 (Robinson).  The Tan-O-On Parties also

asserted that the parties could stipulate to the admissibility of many of the documents they would

use at trial and that the parties could summarize sets of voluminous documents for ease of

presentation. See Tr. 63:1-11 (Robinson).  The Tan-O-On Parties asserted that all the same witnesses

would appear at both proceedings.  See Tr. at 63:1-11 (Robinson).  The Tan-O-On Parties then

estimated that the trial would not be lengthy and emphasized that much of the evidence regarding

the claims against the RPE, Inc. Parties would be the same as the evidence regarding the other

claims presented in this case.  See Tr. 63:1-11 (Robinson).  The Tan-O-On Parties also stressed the

importance of the Kroger Co. vendor number with regards to the testimony of Shannon Casey and

the claims against the RPE, Inc. Parties.  See Tr. 65:12-66:15 (Robinson).  When asked by the Court,

the other parties in this case did not take a position on the Motion to Bifurcate, but indicated a belief

that trying all the issues at once would be simpler.  See Tr. 69:11-25 (Court, Esquivel, Jaramillo,

Bohnhoff).  After hearing arguments regarding the Motion to Bifurcate, the Court indicated that

conducting one trial appeared to be manageable and that doing so would likely create minimal

burdens for each side.  See Tr. 72:11-15 (Court).  The Court then took up the issue of the Motion

for Leave to File Response, and the RPE, Inc. Parties indicated that the motion was effectively moot,

because they had, at the hearing, a fair opportunity to respond to the arguments raised in the

response brief.  See Tr. 74:1-7 (Court, Feuchter).

On April 17, 2012, the parties filed a Joint Motion for Dismissal of Certain Claims by

Plaintiff Skyline Potato Company against Defendants Tan-O-On Marketing, Inc. Hi-Land Potato

Company, Inc., and Carl Worley.  See Doc. 155 ("Joint Motion for Dismissal of Certain Claims").

Skyline Potato moved to dismiss from its Amended Complaint Count IV, Count V, Count VII,

Count VIII, Count X, Count XI, and Count XII against the Tan-O-On Parties.  <u>See</u> Joint Motion for Dismissal of Certain Claims at 2-3.  Skyline Potato moved to dismiss from its Amended Complaint Count I, Count II, Count III, Count IV, Count VII, Count VIII, Count IX, and Count XII against the Hi-Land Potato Parties.  <u>See</u> Joint Motion for Dismissal of Certain Claims at 3.  On April 18, 2012, the Court granted the Joint Motion for Dismissal of Certain Claims.  <u>See</u> Stipulated Order Granting Joint Motion for Dismissal of Certain Claims by Plaintiff Skyline Potato Company Against Defendant Tan-O-On Marketing at 2-3 (Doc. 158).  On April 25, 2012, Intervening Plaintiff Potandon Produce, the Tan-O-On Parties, and the Hi-Land Potato Parties stipulated to the dismissal of all claims Intervening Plaintiff Potandon Produce has asserted.  <u>See</u> Stipulation for Voluntary Dismissal of Claims Asserted by Intervening Plaintiff Potandon Produce, L.L.C. Against Defendant Tan-On-On Marketing, Inc. and Third Party Defendants Hi-Land Potato Company, Inc. and Carl Worley at 1, filed April 25, 2012 (Doc. 167).

## <u>RELEVANT LAW REGARDING RULE 42(b)</u>

Rule 42(b) of the Federal Rules of Civil Procedure grants trial courts discretion to select specified claims or issues, and decide them before proceeding to other matters in the same case where such bifurcation is "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  Bifurcation is appropriate "if such interests favor separation of issues and the issues are clearly separable."  <u>Palace Exploration Co. v. Petroleum Dev. Co.</u>, 316 F.3d 1110, 1119 (10th Cir. 2003)(quoting <u>Angelo v. Armstrong World Indus., Inc.</u>, 11 F.3d 957, 964 (10th Cir. 1993)). Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims. <u>See</u> <u>Mandeville v. Quinstar Corp.</u>, 109 F.App'x 191, 194 (10th Cir. 2004)(unpublished).  "Regardless of efficiency and separability, however, bifurcation is an

abuse of discretion if it is unfair or prejudicial to a party." Angelo v. Armstrong World Indus., Inc.,

11 F.3d at 964. See also Walker v. THI of N.M. at Hobbs Ctr., No. 09-0060, 2011WL 2729195,

at *2 (D.N.M., July 1, 2011)(Browning, J.).

"Not only does the court have discretion to bifurcate claims or issues traditionally considered

to be divisible . . . but also, to separate for trial virtually any other issue that it thinks proper." 8 J.

Moore, Moore's Federal Practice § 42.20[5][a], at 42-51 (3d ed. 2012). When deciding whether

bifurcation is proper, a court should consider a number of factors, including

> whether separate trials will: (1) help to simplify the issues and avoid confusion;
> (2) result in duplication of evidence; (3) create a risk of inconsistent verdicts;
> (4) result in an efficient use of judicial resources; (5) expedite or delay the
> proceedings; and (6) effect the parties' rights to a jury trial.

8 J. Moore, supra § 42-20[4][a], at 42-46. Another important consideration is whether the parties

will try the claims before a jury or before a judge as factfinder. See 9A C. Wright & A. Miller,

Federal Practice and Procedure § 2388, at 104 (3d. ed. 2012).

Bifurcation may be inappropriate for a number of reasons. Bifurcation is an unusual course

of action as a general matter, because "a single trial will usually be more expedient and efficient."

8 J. Moore, supra § 42.20[4][a], at 42-46. When considering whether to bifurcate, "it is the interest

of efficient judicial administration that is to be controlling under the rule, rather than the wishes of

the parties." 9A C. Wright & A. Miller, supra § 2388, at 92-94. For this reason, the party seeking

bifurcation bears the burden of proving that bifurcation is proper "in light of the general principle

that a single trial tends to lessen delay, expense, and inconvenience." Belisle v. BNSF Ry. Co., 697

F.Supp.2d 1233, 1250 (D. Kan. 2010). Bifurcation under rule 42(b) is inappropriate where

evidence to be presented against the parties is inextricably linked. See FDIC v. Refco Grp., Ltd.,184

F.R.D. 623, 629 (D. Colo. 1999)(finding that bifurcation would have no effect on evidence offered

at trial because claims and evidence were inextricably linked).

## RELEVANT LAW REGARDING PACA

Congress enacted PACA "to promote fair trading practices in the marketing of perishable agricultural commodities." In re Magic Rest. Inc., 205 F.3d 108, 110 (3d Cir. 2000). PACA makes it unlawful for "any commission merchant, dealer, or broker to make, for a fraudulent purpose, any false or misleading statement in connection with any transaction involving any perishable agricultural commodity." 7 U.S.C. § 499b(4). Additionally, under PACA, payments for perishable commodities must be made in a prompt manner. See 7 U.S.C. § 499b(4) ("[A]ny commission merchant, dealer or broker . . . [must] make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had . . . ."). In the event that a commission merchant, dealer, or broker violates this requirement, he or she will be liable to the injured party for damages under PACA. See 7 U.S.C. § 499e(a). PACA protects suppliers, sellers, or agents by the formation of a trust in which perishable commodities, inventories of food or other products, along with any proceeds from the sale of such products, must be held in trust for the benefit of unpaid suppliers, sellers, or agents. See 7 U.S.C. § 499e(c) (providing for the creation of a "[t]rust on commodities and sales proceeds for benefit of unpaid suppliers, sellers, or agents."). "The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the merchant, deal or broker" within the applicable time period. 7 U.S.C. § 499e(c)(3).

## RELEVANT LAW REGARDING JURY DEMANDS

A party may demand a jury trial by:

(1)     serving the other parties with a written demand -- which may be included in a pleading -- no later than 14 days after the last pleading directed to the issue is served; and

(2)      filing the demand in accordance with Rule 5(d).

Fed. R. Civ. P. 38(b).  "[Rule] . . . 38(b) require[s] jury demands to be served within ten days after service of the 'last pleading directed to such issue.'"  In re Kaiser Steel Corp., 911 F.2d 380, 388 (10th Cir. 1990)(citing Fed. R. Civ. P. 38(b)).[6]  "The 'last pleading directed to such issue' will generally be an answer or a reply, if appropriate, and is determined on a claim by claim basis."  In re Kaiser Steel Corp., 911 F.2d at 388 (quoting Christenson v. Diversified Builders, Inc., 331 F.2d 992, 994-95 (10th Cir. 1964)).  "Where there are multiple parties, the last pleading by any party on a common issue will determine the time for jury demand."  In re Kaiser Steel Corp., 911 F.2d at 388.  "Amended and supplemental pleadings do not 'revive a right, previously waived, to demand jury trial on the issues already framed by the original pleadings.'"  In re Kaiser Steel Corp., 911 F.2d at 388 (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2320, at 91-93, 94-96 (1971)).  The trial judge has broad discretion to determine whether a demand for a jury trial was timely made.  See Land v. Roper Corp., 531 F.2d 445, 450 (10th Cir. 1976)(citing Fed. R. Civ. P. 39(b)).  "In the absence of abuse of this discretion, a judge's ruling in these circumstances is not to be disturbed."  Bates v. N.M. Corr. Dep't, No. 08-1013, 2009 WL 4329609, at *2 (D.N.M. Nov. 18, 2009)(Browning, J.)(citing Land v. Roper Corp., 531 F.2d at 450).

## ANALYSIS

Because no parties oppose the Motion for Leave to File Response, and because the RPE, Inc. Parties and agree that the issue whether permitting a response to the Motion to Bifurcate is appropriate is now effectively moot, the Court will grant the Motion for Leave to File Response.

---

[6]In 2009, the Federal Rules of Civil Procedure were amended so that the times set in the former rule at 10 days have been revised to 14 days.  See Fed. R. Civ. P. 38 advisory committee's note to 2009 amendments.

The Court concludes that bifurcation is improper, because a single trial will be simpler, multiple trials will be an inefficient use of judicial resources, there will be a significant overlap in evidence among the claims, and a single trial will not prejudice the parties. Thus, the Court will deny the Motion to Bifurcate.

## I.      THE COURT WILL GRANT THE MOTION FOR LEAVE TO FILE RESPONSE.

The Court will grant the Motion for Leave to File Response. Because the RPE, Inc. Parties have withdrawn their opposition to the motion, and because no other parties oppose the motion, the Court will grant the Motion for Leave to File Response. See Tr. at 74:5-7 (Feutcher). Based on the fact that the Tan-O-On Parties were able to file a response before the hearing, and that the RPE, Inc. Parties had a fair opportunity to address the response brief at the April 13, 2012 hearing, the RPE, Inc. Parties withdrew their opposition to the Court granting the Motion for Leave to File Response. See Tr. at 74:5-7 (Feuchter). The Court will allow the Tan-O-On Parties to file their response and will consider their arguments, because the RPE, Inc. Parties have now been able to respond to those arguments at the hearing. Thus, any opposition to the motion is now effectively moot given that the RPE, Inc. Parties' rationale for opposing the motion -- having an opportunity to respond to the response brief -- is no longer relevant.

## II.     THE COURT WILL DENY THE MOTION TO BIFURCATE.

The Court will deny the Motion to Bifurcate. The Court concludes that the RPE, Inc. Parties have not satisfied their burden of proving that bifurcation is proper to serve the purposes of rule 42(b). In deciding whether to try claims separately, the Court considers

> whether separate trials will: (1) help to simplify the issues and avoid confusion; (2) result in duplication of evidence; (3) create a risk of inconsistent verdicts; (4) result in an efficient use of judicial resources; (5) expedite or delay the proceedings; and (6) effect the parties' rights to a jury trial.

8 J. Moore, supra § 42-20[4][a], at 42-46.  Another important consideration is whether the parties will try the claims before a jury or before a judge as factfinder.  See 9A C. Wright & A. Miller, supra § 2388, at 104.  The Court concludes a single trial will be simpler, multiple trials will be an inefficient use of judicial resources, there will be a significant overlap in evidence among the claims, and a single trial will not prejudice the parties.[7]

First, the Court determines that a single trial will not confuse the trier of fact and will be a simpler course of action administratively.  The RPE, Inc. Parties contend that the separate claims at issue in this case would be difficult for a jury to separate.  See Motion to Bifurcate at 3.  As the parties acknowledged at the hearing, however, no party has filed a jury demand.  See Tr. 60:15-20 (Court, Feuchter, Bohnoff).  This contention is, therefore, unpersuasive, as it is not likely that issues will be inseparable or confusing for the Court at a bench trial.  "Bifurcation is regularly used to manage large tort cases and cases that are so complex that juries can better comprehend the issues if exposed to a narrower body of evidence."  8 J. Moore, supra § 42.23[2], at 8-42 (emphasis added).  Furthermore, the Hi-Land Potato Parties, Skyline Potato, and the Intervening Plaintiffs have represented that they believe that a single trial would be simpler.  See Tr. at 70:17-25 (Esquivel, Jaramillo, Bohnhoff).  Thus, only two parties -- RPE, Inc. and Wysocki -- out of many seek bifurcation.  The Court, therefore, determines that the claims will not confuse the trier of fact and

_____

[7]The parties have not raised concerns about the risk of inconsistent verdicts or the issue of their rights to a jury trial.  Thus, because these issues do not appear to be important to the parties or otherwise relevant, the Court will not analyze these factors to resolve this bifurcation issue. Moreover, the parties have indicated that the trial will be a bench trial.  The time to file a jury demand has passed under rule 38(b) given the great length of time that has passed since this case was originally filed as well as the time that has passed since all of the parties have filed their original pleadings against one another.  See Fed. R. Civ. P. 38(b) (requiring that a jury demand be made "no later than 14 days after the last pleading directed to the issue is served"); In re Kaiser Steel Corp., 911 F.2d at 388.

that a single trial will be simpler than two.

Second, the evidence to be presented at both trials is linked and substantially similar. The parties agreed at the hearing that the RPE, Inc. Parties did not commit PACA-trust violations. See Tr. 56:25-57:2 (Feutcher); id. 66:22-67:8 (Robinson). The Court finds, however, that there is a significant overlap among the witness testimony and documentary evidence that the parties will present regarding the claims asserted against both the Hi-Land Potato Parties and the RPE, Inc. Parties. As the Third-Party Complaint indicates, the Hi-Land Parties worked closely with the RPE, Inc. Parties and transferred assets to them. See Third Party Complaint ¶¶ 24-26, at 7. According to Skyline Potato's allegations, the Intervening Plaintiffs' allegations, and the Tan-O-On Marketing Parties' allegations, this transfer of assets: (i) was legally improper; (ii) caused harm to various parties; and (iii) unjustly enriched both Hi-Land Potato and RPE, Inc. See Complaint in Intervention ¶ 61, at 14; Complaint in Intervention ¶¶ 41-42, at 10; Third Party Complaint ¶¶ 28, 34, at 8-9. Thus, it appears that the parties will present much of the same evidence, because many of the applicable facts seem intertwined. Further, as indicated at April 13, 2012 hearing, the RPE, Inc. Parties conceded that the following witnesses would appear twice if bifurcation occurred: (i) Shannon Casey; (ii) Shawna Casey; (iii) Worley; (iv) Wysocki; and (v) J. Anderson. See Tr. 58:22-60:2 (Feuchter, Court). The Tan-O-On Parties have represented that all the same witnesses would appear at both trials. See Tr. at 63:1-11 (Robinson). Additionally, it appears that the parties can stipulate to the admissibility of many of the documents in this case, thus expediting the trial for all parties. See Tr. 63:1-11 (Robinson). Bifurcating the trials, therefore, will not likely expedite the proceedings. See 8 J. Moore, supra § 42.20[4][a], at 42-46. The Court concludes that substantially similar evidence will be necessary to prove claims of PACA-trust violations as that which will be necessary to prove claims arising out of the dispute concerning the RPE, Inc. Parties.

Third, separate trials will result in an inefficient use of judicial resources.  The Court finds that the additional burden the RPE, Inc. Parties will face if the Court does not bifurcate the proceedings is minimal.  While there may be some witnesses who testify concerning matters outside the scope of the claims asserted against the RPE, Inc. Parties, any prejudice the RPE, Inc. Parties will suffer is minimal and manageable given the significant overlap in evidence.  Judicial economy is not served by separate trials, because it would be inconvenient and wasteful for the Court to hear the same testimony from witnesses twice.  See 9A C. Wright & A. Miller, supra § 2388 at 93-94. According to the parties, the trial will not likely take a great deal of the Court's time and will not likely take more than one week.  Thus, the burden to the RPE, Inc. Parties is minimal, and a single trial appears to best serve the interest of judicial efficiency.

Fourth, the parties do not appear to face significant prejudice if the Court conducts a single trial.  See Angelo v. Armstrong World Indus., Inc., 11 F.3d at 964.  The RPE, Inc. Parties assert that they will face prejudice based on the additional time and resources they must spend during trial and discovery if the Court does not grant the Motion to Bifurcate.  See Motion to Bifurcate at 5.  If the discovery is not relevant, then the RPE, Inc. Parties can make a grown-up, professional decision and determine whether they need to participate in the discovery.  While the Court understands that lawyers are nervous about not attending depositions in cases where their clients are involved, the parties should not shift that burden to the Court in the guise of a motion to bifurcate.  The lawyers will have to make those tough, economic decisions.  Furthermore, bifurcation under rule 42 deals more with conducting separate trials trial rather than conducting separate discovery.  See Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." (emphasis added)).  There has been no motion to sever the proceedings for

-22-

improper joinder under rule 21.  <u>See</u> Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for

dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop

a party.  The court may also sever any claim against a party.").

Also, at the hearing, there was an argument that RPE, Inc. Parties would face prejudice,

because it was the strategic choice of the Tan-O-On Parties to concentrate on the acts of Shannon

Casey to prejudice other parties.  <u>See</u> Tr. 60:3-7 (Feutcher).  Essentially the RPE, Inc. Parties appear

to take the position that evidence regarding Shannon Casey might be unfairly prejudicial under rule

403.  See Tr. 60:3-7 (Feutcher).  Nevertheless, "the concerns of rule 403 apply differently in a bench

trial where a jury has no role in the decision-making process."  <u>Coffey v.  United States</u>, No.  08-

0588, 2012 WL 1698289 at *4 (D.N.M. May 8, 2012)(Browning, J.)(citing <u>United States v.</u>

<u>Kienlen</u>, 349 F.App'x 349, 351(10th Cir. 2009)(unpublished)).  "[E]xcluding evidence in a bench

trial under 'Rule 403's weight of probative value against prejudice [is] improper.'"  <u>Coffey v.</u>

<u>United States</u>, 2012 WL 1698289 at *4.  Therefore, it will not be prejudicial for the Court to hear

evidence in a single trial regarding PACA violations along with other actions Shannon Casey has

allegedly taken.  The subject matter of this case, which revolves largely around potatoes and some

allegations of improper conduct by certain businesses wronging other businesses, is also not highly

controversial or likely to evoke an emotional response if there ever were a jury trial.  Furthermore,

evidence regarding Shannon Casey's actions before employment with RPE, Inc. will likely be

relevant to the claims the Tan-O-On Parties have asserted regarding unjust enrichment given the

allegations of improper use of the Kroger Co. vendor number -- which are among the central

allegations against the RPE, Inc. Parties.  As explained at the hearing, it appears that a Kroger Co.

vendor number is highly beneficial when doing business with Kroger Co.  <u>See</u> Tr. 65:12-66:15

(Robinson).  There are allegations that the Kroger Co. vendor number was among the Tan-O-On

Marketing assets transferred to Hi-Land Potato, and then to RPE, Inc. The Tan-O-On Parties allege that this fraudulent transfer has unjustly enriched the RPE, Inc. Parties. Thus, there is minimal prejudice to the RPE, Inc. Parties, given that they will try the case before the Court rather than a jury and that there appears to be some unavoidable overlap in the applicable evidence.

In conclusion, the Court will deny the Motion to Bifurcate, because rule 42(b) does not counsel in favor of bifurcation. First, separating the claims into two trials will not simplify the issues presented or the proceedings. Second, much of the evidence to be presented is linked between the various sets of claims. Third, bifurcating the claims asserted against the RPE, Inc. Parties will not promote judicial economy. Lastly, the RPE, Inc. Parties will suffer minimal prejudice from the allegedly prejudicial evidence. Thus, the Court will deny the Motion to Bifurcate.

**IT IS ORDERED** that: (i) Defendant Tan-O-On Marketing, Inc.'s Motion for Leave to File Response to Motion to Bifurcate out of Time, filed April 13, 2012 (Doc. 153), is granted; and (ii) Third-Party Defendants, RPE, Inc., and Russell Wysocki's Motion to Bifurcate, filed March 8, 2012 (Doc. 128), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Patrick J. Griebel
James T. Burns
Heather S. Jaramillo
Patrick J. Griebel, P.C.
Albuquerque, New Mexico

-- and --

Justin P. Pizzonia
Johanna A. Pickel
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gordon H. Rowe III
The Rowe Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Henry M. Bohnhoff
Leslie McCarthy Apodaca
Melanie B. Stambaugh
Rodey Dickason Sloan Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants Hi-Land Potato Company, Inc. and Carl Worley*

Gordon H. Rowe III
The Rowe Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Mark Lounsbury and Bill Metz*

Shannon Robinson
Albuquerque, New Mexico

    *Attorney for Defendants Tan-O-On Marketing Inc., Gerald Anderson, and Julie
      Anderson*

Justin P. Pizzonia
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

-- and --

Katy Koestner Esquivel
Meuers Law Firm, PL
Naples, Florida

> *Attorneys for Intervening Plaintiffs Folsom Farm Corporation; Potandon Produce, L.L.C.; Mart Produce Corporation; Billingsley Produce Sales, Inc.; Alsum Produce, Inc.; and Peterson Bros. River Valley Farms, Inc.*

Benjamin F. Feutcher
William Spencer Reid
Keleher & McLeod
Albuquerque, New Mexico

> *Attorneys for Defendants RPE, Inc. and Russell Wysocki*