**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SKYLINE POTATO COMPANY, INC.,
A Colorado Corporation,

       Plaintiff,

vs.                                                             No. CIV 10-0698 JB/RHS

TAN-O-ON MARKETING, INC. d/b/a TMI;
a Colorado corporation with a principal place
of business in New Mexico, HI-LAND POTATO
COMPANY, INC., a Colorado corporation;
GERALD R. ANDERSON, in his individual
capacity and As Director/Shareholder of Tan-O-On
Marketing Inc., JULIE A. ANDERSON, in her
individual capacity and as Director/Shareholder
of Tan-O-On Marketing Inc., MARK LOUNSBURY,
in his individual capacity and as Director/Shareholder
of Tan-O-On Marketing Inc., BILL METZ, in his
individual capacity and As Director/Shareholder of
Tan-O-On Marketing Inc., and CARL WORLEY,
in his individual capacity, as Director/Shareholder of
Tan-O-On Marketing Inc., and as Director/Shareholder
Hi Land Potato Company,

       Defendants,

and

FOLSON FARM CORPORATION,
POTANDON PRODUCE, L.L.C.,
MART PRODUCE CORPORATION,
BILLINGSLEY PRODUCE SALES,
INC., ALSUM PRODUCE, INC., and
PETERSON BROS. RIVER VALLEY
FARMS, INC.,

       Intervening Plaintiffs,

vs.

TAN-O-ON MARKETING, INC. d/b/a TMI, and
HI-LAND POTATO COMPANY, INC.,

Defendants,

and

TAN-O-ON MARKETING, INC. d/b/a TMI;
GERALD R. ANDERSON, JULIE A. ANDERSON,

Third-Party Plaintiffs,

vs.

HI-LAND POTATO COMPANY, INC.;
and CARL WORLEY, RPE, INC.
and RUSSELL WYSOCKI

Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Skyline Potato Company and

Intervening Plaintiffs' Joint Motion for Leave to Take the Deposition of Non-Parties Shawna Casey,

Stephanie Merritt, and Unidentified Kroger Corporate Representative, filed May 25, 2012 (Doc.

177)("Motion to Take Depositions").  The Court held a hearing on June 21, 2012.  The primary

issues are: (i) whether the Court should grant Plaintiff Skyline Potato Company, Inc. and the

Intervening Plaintiffs[1] leave to take depositions, after the scheduled discovery deadline, of Shawna

Casey; and (ii) whether the Court should grant Skyline Potato and the Intervening Plaintiffs leave

to take depositions, after the scheduled discovery deadline, of several employees of The Kroger Co.,

including Stephanie Merritt and other Kroger Co. representatives.  The Court will grant in part and

deny in part the Motion to Take Depositions.  The Court will not permit Skyline Potato and the

---

[1]The Intervening Plaintiffs include: (i) Folson Farm Corporation; (ii) Potandon Produce,
L.L.C.; (iii) Mart Produce Corporation; (iv) Billingsley Produce Sales, Inc.; (v) Alsum Produce, Inc.;
and (vi) Peterson Bros. River Valley Farms, Inc.

Intervening Plaintiffs to take Shawna Casey's deposition.  The Court will grant Skyline Potato and the Intervening Plaintiffs leave to depose Kroger Co. representatives consistent with the specified topics in their previous subpoena under rule 30(b)(6) of the Federal Rules of Civil Procedure. Skyline Potato and the Intervening Plaintiffs may depose Kroger Co. representatives regarding the use of the Kroger Co. vendor number issued to Defendant Tan-O-On Marketing, Inc. but may not ask questions during the depositions regarding the use of the iTrade system.[2]

## PROCEDURAL BACKGROUND

On July 23, 2010, Skyline Potato filed its Petition for Enforcement of USDA PACA Order and Award of Damages; Complaint for Violation of Federal Unfair Trade Practices Provision in PACA (7 U.S.C. § 499b), Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Money Owed on Open Account, and Prayer for Declaratory Relief and Piercing of the Corporate Veil against Defendants Tan-O-On Marketing, Inc., Hi-Land Potato, G. Anderson, J. Anderson, Mark Lounsbury, Bill Metz, and Carl Worley.  See Doc. 2 ("Original Complaint"). Skyline Potato, in its Original Complaint, refers to Shawna Casey in various places as a person connected with the events underlying this case.  See Original Complaint ¶¶ 14, 32, 35, at 4, 6. Skyline Potato notes that it would have named her as a party had she not recently been "discharged under a chapter 7 bankruptcy case."  Original Complaint ¶ 14, at 4.

On October 22, 2010, Shannon Casey gave a deposition as part of a bankruptcy proceeding

---

[2]iTrade is a software that companies use to track and manage transactions with suppliers and customers.  See What Is iTrade?, iTrade, http://www.itrade.net/about.php (last visited July 3, 2012). Kroger Co. uses the iTrade system to keep records of invoices from suppliers with Kroger Co. vendor numbers.  Tan-O-On Marketing relates that vendors working with Kroger Co. are supposed to enter their invoices into the iTrade system where the risk management division within Kroger Co. can review those invoices.  See Federal Digital Tape Recorder at 10:04:38-05:16 (June 21, 2012)(Robinson).

in the United States Bankruptcy Court for the District of New Mexico in the case Folsom Farm Corp. v. Casey, No. Adv. Pro. 10-01068-s.  See Deposition of Shannon Patrick Casey (dated October 22, 2010), filed June 14, 2012 (Doc. 191-1)("Shannon Casey Depo.").  Shannon Casey relates in his deposition that his wife, Shawna Casey, was involved in selling Defendant Hi-Land Potato Company, Inc.'s products to Kroger Co. and other grocers.  See Shannon Casey Depo. at 110:2-111:17.

On March 1, 2011, Defendants Hi-Land Potato, Carl Worley (the "Hi-Land Potato Parties"), Skyline Potato, Tan-O-On Marketing, Defendants Gerald Anderson, and Julie Anderson filed a Joint Status Report and Provisional Discovery Plan.  See Doc. 29 ("JSR").[3] All parties' disclosures included Shawna Casey as a potential witness.  See JSR at 6-8.  The parties stated that all discovery was to be commenced in time to be completed by September 1, 2011.  See JSR at 9.  The Court adopted the JSR on March 9, 2011.  See Order Adopting Joint Status Report and Provisional Discovery Plan at 1 (Doc. 36).

On March 3, 2011, Skyline Potato filed its Certificate of Service stating that it had served a copy of its initial discovery disclosures on opposing counsel.  See Doc. 32.  On March 9, 2011, the Court filed the Scheduling Order for this case.  See Doc. 35.  The Court ordered that the

---

[3]At the time the parties filed the JSR, Skyline Potato, Tan-O-On Marketing, the Andersons, Hi-Land Potato, and Worley were the only parties to the case.  On July 8, 2011, the Court entered an order permitting the Intervening Plaintiff to intervene as plaintiffs in this case.  See Order Granting Motion for Leave to Intervene at 1 (Doc. 59).  On November 23, 2011, Tan-O-On Marketing and the Andersons asserted claims against some Third-Party Defendants, RPE, Inc. and Russell Wysocki, who were not previously parties to the case.  See Third Party Complaint for Fraud and Theft of Trade Secrets and Unjust Enrichment (Doc. 72).  On February 23, 2012, the Court entered an order granting the dismissal of all claims that the Andersons had asserted in their individual capacities, thereby eliminating them as named parties to this case.  See Stipulated Order Dismissing Claims Filed by Third-Party Plaintiffs Gerald and Julie Anderson in Their Individual Capacities at 1-2 (Doc. 117).

termination date for discovery would be September 1, 2011.  See Scheduling Order at 1.  On March 9, 2011, the Hi-Land Potato Parties filed their Certificate of Service stating that they had served their initial discovery disclosures on opposing counsel.  See Doc. 38.  The Hi-Land Potato Parties relate that they listed Shawna Casey as a potential witness in their initial disclosures and emphasize that the Intervening Plaintiffs had listed Shawna Casey as a potential witness in their initial disclosures. See Federal Digital Tape Recorder at 9:44:59-45:16 (June 21, 2012)(Court, Bohnhoff)("FTR").  On March 24, 2011, Tan-O-On Marketing filed a Certificate of Service stating that it had served its initial discovery disclosures on opposing counsel.  See Doc. 42.  Tan-O-On Marketing acknowledges that it had listed Shawna Casey as a potential witness in its initial discovery disclosures.  See FTR at 9:31:13-19 (Robinson).

On August 12, 2011, the parties filed their Joint Motion for Additional Scheduling Conference.  See Doc. 65.  The parties requested that the Court hold a scheduling conference to establish new case-management deadlines, because new parties had been added to the case, various parties had amended their pleadings, and various parties had dismissed claims.  See Joint Motion for Additional Scheduling Conference at 1-2.  On November 3, 2011, the Court issued an Amended Scheduling Order setting the discovery deadline for April 2, 2012.  See Amended Scheduling Order at 1 (Doc. 78).  On October 7, 2011, the Intervening Plaintiffs filed their Certificate of Service indicating that they had served their initial disclosures on opposing counsel.  See Doc. 70.

On October 14, 2011, Tan-O-On Marketing filed its Third Party Complaint for Fraud and Theft of Trade Secrets and Unjust Enrichment to assert claims against the Hi-Land Potato Parties and Third-Party Defendants RPE, Inc. and Russell Wysocki (the "RPE, Inc. Parties").  See Doc. 72 ("Amended Third-Party Complaint").  Tan-O-On Marketing alleges that the Andersons entered an

agreement in which they would sell Tan-O-On Marketing shares to the Caseys.[2]  See Amended Third-Party Complaint ¶ 15, at 4.  Tan-O-On Marketing also alleges that, in January 2010, Shawna Casey established a sales office for Hi-Land Potato and began selling Hi-Land Potato's produce directly to customers.  See Amended Third-Party Complaint ¶ 20, at 5.  On October 21, 2011, Skyline Potato filed its First Amended Petition and Complaint, Prayer for Declaratory Relief and Piercing of the Corporate Veil.  See Doc. 73 ("First Amended Complaint").  Skyline Potato similarly alleges that the Andersons entered an agreement where they would sell Tan-O-On Marketing shares to the Caseys.  See First Amended Complaint ¶ 33, at 6.

On January 9, 2012, the RPE, Inc. Parties filed their Certificate of Service stating that they had served their initial discovery disclosures on opposing counsel.  See Doc. 91.  The RPE, Inc. Parties state that all parties listed Shawna Casey as a potential witness in both their initial disclosures and the JSR.  See FTR at 9:34:50-34:59 (Feuchter).

On March 8, 2012, Skyline Potato, the Intervening Plaintiffs, Tan-O-On Marketing, and the Hi-Land Potato Parties filed their Joint Expedited Motion to Enlarge Discovery Deadline and to Modify Amended Scheduling Order.  See Doc. 127 ("Motion to Enlarge Discovery").  The moving parties sought to enlarge the discovery deadline given that they had diligently pursued discovery, but had not been able to complete the discovery process.  See Motion to Enlarge Discovery at 4-5. The moving parties stated that they did not believe that discovery would be complete by the April 2, 2012, deadline.  See Motion to Enlarge Discovery at 5-6.  The moving parties requested that the

---

[2]According to Skyline Potato's pleadings, Shannon Casey "was an officer and shareholder of Tan-O-On and Hi Land," whom Skyline Potato did not name as a defendant in this case because of his "being discharged under a chapter 7 bankruptcy case."  Amended Complaint ¶ 13, at 3-4. Similarly, Skyline Potato alleges that "Shawna Casey was an officer and shareholder of Tan-O-On and Hi Land," who was "discharged under a chapter 7 bankruptcy case."  Amended Complaint ¶ 14, at 4.

Court push forward by sixty days the deadlines in the Amended Scheduling Order.  See Motion to Enlarge Discovery at 6.  Their proposed deadline to complete discovery was June 4, 2012.  See Motion to Enlarge Discovery at 6.  The RPE, Inc. Parties opposed the requested relief.  Motion to Enlarge Discovery at 1 n.1.  On March 22, 2012, the Court granted the Motion to Enlarge Discovery and adopted the proposed discovery deadline of June 4, 2012.  See Order Granting Joint Expedited Motion to Enlarge Discovery Deadline and to Modify Amended Scheduling Order at 1-2 (Doc. 141).

On April 19, 2012, the Hi-Land Potato Parties served the other parties with a notice of deposition for Shannon Casey's deposition.  See Certificate of Service at 1, filed April 19, 2012 (Doc. 164).[3]  Skyline Potato and the Intervening Plaintiffs state that during Shannon Casey's deposition on May 15, 2012, "it became evident that much of the information sought from Mr. Casey was actually held by his wife, Shawna Casey."  See Motion to Take Depositions at 2-3. Skyline Potato notes that, at the May 15, 2012 deposition, Shannon Casey described his memory as "being black" regarding the 2009-2010 time period, particularly regarding key events in this case. FTR at  9:26:29-26:52 (Jaramillo).  Skyline Potato relates that, after realizing that Shannon Casey would not be able to provide needed information and after hearing Shannon Casey represent that Shawna Casey would be able to provide this information, it contacted opposing counsel on May 24, 2012 about taking Shawna Casey's deposition.  See FTR at 9:26:52-27:22 (Jaramillo, Court). Skyline Potato explains that opposing counsel would not agree to take Shawna Casey's deposition, because they believed that there was not adequate time to serve the subpoena and to take the deposition before the discovery deadline.  See FTR at 9:27:22-28:00 (Jaramillo, Court).  Skyline

---

[3]There is no record on CM/ECF of the date when Shannon Casey's deposition took place. The parties do not dispute, however, that his deposition took place on May 15, 2012.  The parties also do not dispute that the deposition took place in Monte Vista, Colorado.

Potato explains that, before the parties took Shannon Casey's deposition on May 15, 2012, it had determined that it would be beneficial to take only his deposition, because it appeared that he had substantially the same information as Shawna Casey.  See FTR at 10:07:19-07:45 (Jaramillo). Skyline Potato notes that it initially appeared that Shannon Casey was the principal party involved in the decisions surrounding Tan-O-On Marketing's allegedly improper conduct and its closure.  See FTR at 10:07:56-08:06 (Jaramillo).

On April 20, 2012, the Intervening Plaintiffs issued a subpoena under rule 30(b)(6) of the Federal Rules of Civil Procedure to Kroger Co. to designate representatives who could testify on behalf of the company.  See Subpoena to Testify at a Deposition or to Produce Documents in a Civil Action, filed June 18, 2012, (dated April, 20, 2012)(Doc. 194-1)("Kroger Subpoena").   The subpoena requested that the representatives testify on the following topics: (i) sales from Tan-O-On Marketing to Kroger Co. between August 1, 2009, and July 31, 2010; (ii) sales from Hi-Land Potato to Kroger Co. between August 1, 2009, and July 31, 2010; and (iii) the use, since August 1, 2009, of the Kroger Co. vendor number Kroger Co. had issued to Tan-O-On Marketing.  See Kroger Subpoena at 17.  The Intervening Plaintiffs relate that Kroger Co. had designated Candi Mercuri, one of Kroger Co.'s employees, as an individual who would be able to testify regarding these matters, even though she could not provide this information at her deposition on May 9, 2012.  See FTR at 9:22:27-22:37.  Skyline Potato and the Intervening Plaintiffs note that during Mercuri's deposition, they discovered that she did not have information regarding Kroger Co.'s use of the iTrade system or Kroger Co.'s vendor number requirements.  See Motion to Take Depositions at 3. The Intervening Plaintiffs explain that Kroger Co. identified an appropriate representative, Stephanie Merritt -- a different Kroger Co. employee -- approximately ten days after the date of Mercuri's deposition; the Intervening Plaintiffs relate that they then requested availability dates from the other

parties to take Merritt's deposition. <u>See</u> FTR 9:22:57-24:05 (Esquivel, Court). The Intervening Plaintiffs assert that the other parties responded to their request by stating that there was not sufficient time to take a deposition before the discovery deadline. <u>See</u> FTR at 9:23:45-24:27 (Esquivel).

On May 25, 2012, Skyline Potato and the Intervening Plaintiffs filed their Motion to Take Depositions. <u>See</u> Doc. 177. Skyline Potato and the Intervening Plaintiffs relate that Skyline Potato, on May 24, 2012, requested available dates from the other parties to take the Shawna Casey's deposition. <u>See</u> Motion to Take Depositions at 3. Skyline Potato and the Intervening Plaintiffs relate that the Hi-Land Potato Parties and RPE, Inc. Parties opposed taking Shawna Casey's deposition. <u>See</u> Motion to Take Depositions at 3. Skyline Potato and the Intervening Plaintiffs state that the Intervening Plaintiffs, on May 25, 2012, requested availability dates from the other parties to take depositions of Kroger Co. representatives who could provide information regarding these matters. <u>See</u> Motion to Take Depositions at 3. Skyline Potato and the Intervening Plaintiffs represent that the Hi-Land Potato Parties and the RPE, Inc. Parties did not respond to this request. <u>See</u> Motion to Take Depositions at 3-4. Skyline Potato and the Intervening Plaintiffs argue that they were diligent in pursuing discovery but cannot meet the discovery deadline based on the short time remaining before the discovery deadline passes, and the conflicting schedules of the deponents and multiple parties. <u>See</u> Motion to Take Depositions at 4. Skyline Potato and the Intervening Plaintiffs request that the Court grant leave to take the depositions of Shawna Casey, Merritt, and another representative that Kroger Co. will likely identify in response to the rule 30(b)(6) subpoena. <u>See</u> Motion to Take Depositions at 5.

On June 11, 2012, the Hi-Land Potato Parties filed Hi-Land Potato Company Inc.'s and Carl Worley's Response to Plaintiff's and Intervening Plaintiffs' Joint Motion for Leave to Take the

Deposition of Non-Parties Shawna Casey, Stephanie Merritt, and Unidentified Kroger Corporate Representative. See Doc. 187 ("Hi-Land Potato Parties' Response"). The Hi-Land Potato Parties argue that the Court should deny the Motion to Take Depositions, because "Skyline and [the Intervening Plaintiffs] have not and cannot show good cause why the requested depositions could not have been taken within the expansive time frame the parties have been given to conduct discovery in this case." Hi-Land Potato Parties' Response at 1-2. The Hi-Land Potato Parties contend that extending the discovery deadline a fourth time "would cause significant unnecessary expense and prejudice for the parties." Hi-Land Potato Parties' Response at 2.

The Hi-Land Potato Parties assert that the information the parties obtained during Shannon Casey's deposition on May 15, 2012, does not provide good cause for extension, because Skyline Potato and the Intervening Plaintiffs already had notice that Shawna Casey has information relevant to this case. See Hi-Land Potato Parties' Response at 3-4. The Hi-Land Potato Parties relate that Skyline Potato and the Intervening Plaintiffs had notice that Shawna Casey had significant involvement in the business activities underlying the dispute in this case from the time Tan-O-On Marketing filed its Amended Third-Party Complaint on October 14, 2011. See Hi-Land Potato Parties' Response at 4. The Hi-Land Potato Parties contend that Skyline Potato and the Intervening Plaintiffs also had notice of Shawna Casey's involvement in the events underlying this lawsuit, because her name appeared on several potato invoices produced throughout the discovery period. See Hi-Land Potato Parties' Response at 4. The Hi-Land Potato Parties also argue that a deposition of Shawna Casey "could have been taken relatively easily, efficiently, and cost-effectively when the parties were taking depositions in Colorado last month." Hi-Land Potato Parties Response at 5. The Hi-Land Potato Parties contend that Skyline Potato and the Intervening Plaintiffs cannot show good cause for the extension and that the parties would incur unnecessary expenses to take these

depositions.  See Hi-Land Potato Parties' Response at 5.

The Hi-Land Potato Parties contend that the information Skyline Potato and the Intervening Plaintiffs seek from Kroger Co. representatives is information that they "never identified in their [rule 30(b)(6) notice to take Ms. Mercuri's deposition."  Hi-Land Potato Parties' Response at 4. The Hi-Land Potato Parties argue that the requested discovery is "simply an eleventh thought about new discovery they would like to pursue." Hi-Land Potato Parties' Response at 4.  They assert that Skyline Potato and the Intervening Plaintiffs "are not attempting to remedy a failure on the part of Kroger [Co.] to comply with the earlier rule 30(b)(6) deposition." Hi-Land Potato Parties' Response at 6.  The Hi-Land Potato Parties also indicate that they have identified additional discovery that they would like to pursue if the discovery deadline had not already passed.  See Hi-Land Potato Parties' Response at 6.  They request, in the alternative, that the Court permit them to take an additional deposition of one of Tan-O-On Marketing's accountants.  See Hi-Land Potato Parties' Response at 7.

On June 14, 2012, the RPE, Inc. Parties filed their Third-Party Defendants RPE, Inc., and Russell Wysocki's Response in Opposition to Joint Motion for Leave to Take the Depositions of Non-Parties Shawna Casey, Stephanie Merritt, and Unidentified Kroger Corporate Representative. See Doc.  191 ("RPE, Inc. Parties' Response").  The RPE, Inc. Parties join the Hi-Land Potato Parties' arguments.  See RPE, Inc. Parties' Response at 1.  The RPE, Inc. Parties argue that Skyline Potato and the Intervening Plaintiffs had notice that Shawna Casey possessed information regarding the events underlying this lawsuit.  See RPE, Inc. Parties' Response at 2.  They also contend that these parties were on notice that Shannon Casey did not have the information that Shawna Casey has given the contents of Shannon Casey's deposition taken in connection with his bankruptcy proceedings.  See RPE, Inc. Parties' Response at 2.

-11-

On June 18, 2012, Skyline Potato and the Intervening Plaintiffs filed their Reply in Support of Plaintiff's and Intervening Plaintiffs' Joint Motion for Leave to take the Deposition of Non-Parties Shawna Casey, Stephanie Merritt, and Unidentified Kroger Corporate Representative.  See Doc. 194 ("Reply").  Skyline Potato and the Intervening Plaintiffs argue that Shannon Casey's testimony during the deposition taken as part of his bankruptcy proceedings was "in stark contrast" to the memory lapse he testified he had suffered during the deposition on May 15, 2012.  Reply at 4.  Skyline Potato and the Intervening Plaintiffs argue that information they received from Kroger Co. indicated that Mercuri would be able to testify about the following topics: (i) use of the iTrade system; (ii) the requirements for using a Kroger Co. vendor number; and (iii) certain spreadsheets produced during discovery.  See Reply at 2.  Skyline Potato and the Intervening Plaintiffs contend that these events provide good cause for the enlargement of the discovery deadline to take additional depositions.  See Reply at 2-3.  They assert that permitting this discovery will not cause unfair prejudice, because the parties have already scheduled a deposition of Wysocki at a time after the discovery deadline and because the Court will likely continue the trial.  See Reply at 4.

On June 20, 2012, the Court entered its Order Granting Motion to Reschedule Trial Date. See Doc. 197 ("Order Rescheduling Trial").  In its Order to Reschedule, the Court re-set the trial for October 22, 2012.  See Order Rescheduling Trial at 2.

At the hearing on June 21, 2012, the Intervening Plaintiffs began with their arguments regarding the deposition of Kroger Co. representatives.[4]  The Intervening Plaintiffs clarified that the parties had arranged the original deposition of the Kroger Co. employee, Mercuri, as both a

---

[4]Skyline Potato and the Intervening Plaintiffs brought the Motion to Take Depositions jointly.  See Motion to Take Depositions at 1.  At the hearing, the Intervening Plaintiffs argued in support of the motion with regards to the depositions of Kroger Co. representatives.  Skyline Potato argued in support of their motion with regards to Shawna Casey's deposition.

deposition of a Kroger Co. employee that the parties knew had relevant information and as a rule 30(b)(6) deposition.  See FTR at 9:18:26-18:39 (Esquivel).  The Intervening Plaintiffs stated that they seek, in their Motion to Take Depositions, depositions from two different Kroger Co. representatives: (i) one who can testify about use of Tan-O-On Marketing's Kroger Co. vendor number; and (ii) one who could testify about certain documents produced in response to the rule 30(b)(6) subpoena, specifically a spreadsheet summarizing sales made using Tan-O-On Marketing's Kroger Co. vendor number.  See FTR at 9:20:47-21:40 (Court, Esquivel).

Skyline Potato then argued in support of their Motion to Take Depositions regarding Shawna Casey's deposition.  Skyline Potato contended that the basis of its request to take the Shawna Casey's deposition is the inability to obtain the information which it sought as part of Shannon Casey's deposition on May 15, 2012.  See FTR at 9:25:02-25:15 (Jaramillo).  Skyline Potato asserted that the transcript from Shannon Casey's deposition taken in connection with his bankruptcy proceedings does not indicate that he has a poor memory regarding the events underlying this case.  See FTR at 9:25:35-25:52 (Jaramillo).  Skyline Potato then argued that there is no unfair prejudice to the other parties in taking Shawna Casey's deposition, because the costs would be minimal, given that the parties have used video conferencing for depositions in this case already, and because the parties have already taken depositions after the June 4, 2012 deadline.  See FTR at 9:28:30-29:30 (Jaramillo, Court).  Skyline Potato also argued that there are various discovery motions still pending for the Court to resolve and contended that, if the Court denies the Motion to Take Depositions, Skyline Potato and the Intervening Plaintiffs will suffer prejudice which outweighs the prejudice the other parties may face.  See FTR at 9:29:48-30:32 (Jaramillo).

The Court then heard argument from Tan-O-On Marketing in support of the Motion to Take Depositions.  Tan-O-On Marketing argued that the inability to obtain sufficient information from

Shannon Casey serves as a recent turn of events that created the need to take Shawna Casey's deposition.  See FTR at 9:31:30-31:43 (Robinson).  Tan-O-On Marketing stated that these events permitted the parties to more fully understand Shawna Casey's involvement in the events underlying this case.  See FTR at 9:31:47-32:16 (Robinson).  Tan-O-On Marketing stated that, at the beginning of the case, Shawna Casey did not appear to be a major player, even though the parties had listed her as a potential witness.  See FTR at 9:32:17-33:30 (Court, Robinson).

The RPE, Inc. Parties noted that Skyline Potato identified Shawna Casey as a person materially involved in events underlying this case in its Original Complaint.  See FTR at 9:35:10-35:40 (Feuchter, Court).  They argued that Skyline Potato and the Intervening Plaintiffs could have timely subpoenaed Shawna Casey for a deposition if they had issued the subpoena the day after Shannon Casey's deposition.  See FTR at 9:35:41-36:11 (Feuchter).  The RPE, Inc. Parties acknowledged that Skyline Potato and the Intervening Plaintiffs did not have the opportunity to depose the appropriate representative from Kroger Co., but contended that the proper recourse would have been to file a motion to compel against Kroger Co. to produce a representative who could testify on the matters identified in the 30(b)(6) subpoena.  See FTR 9:36:20-36:56 (Court, Feuchter).  The RPE, Inc. Parties then stated that they did not oppose permitting a rule 30(b)(6) deposition of a Kroger Co. representative able to testify on the topics the Intervening Plaintiffs had previously identified.  See FTR at 9:38:02-38:31 (Court, Feuchter).  The RPE, Inc. Parties related that their primary concern was whether the Court would permit Shawna Casey's deposition.  See FTR at 9:39:09-39:14 (Feuchter).  The RPE, Inc. Parties argued that Shannon Casey's deposition during his bankruptcy proceedings provided notice regarding Shawna Casey's role in the underlying events of this case.  See FTR at 9:39:55-40:03 (Feuchter).  The RPE, Inc. Parties also contended that Shannon Casey's deposition from these bankruptcy proceedings indicates that his memory regarding

-14-

the events of this case was incomplete.  See FTR at 9:40:12-40:25 (Feuchter).  The RPE, Inc. Parties

expressed concern for Shawna Casey's rights given that she is not represented by counsel and cannot

afford counsel.  See FTR 9:40:55-41:08 (Feuchter).  The RPE, Inc. Parties noted that this concern

is relevant, because the previous depositions which Shannon Casey gave were invasive and

burdensome.  See FTR at 9:41:10-41:53, 42:25-42:35 (Feuchter).  The RPE, Inc. Parties requested

that, if the Court were to permit Shawna Casey's deposition to go forward, it be limited in scope --

to protect her rights -- to topics regarding her involvement at Hi-Land Potato.  See FTR at 9:41:48-

42:15 (Feuchter).  The RPE, Inc. Parties asserted that discovery has proceeded for a long time with

multiple deadline extensions, and that discovery needs to end at some point.  See FTR at 9:42:46-

43:12 (Feuchter).  The RPE, Inc. Parties also explained that the deposition which the parties took

after the discovery deadline passed was the result of circumstances beyond the parties' control that

the parties foresaw long before the deadline.  See FTR at 9:43:20-44:09 (Feuchter).

        The Hi-Land Potato Parties stated that they mainly opposed taking Shawna Casey's

deposition.  See FTR at 9:44:25-44:38 (Bohnhoff).  The Hi-Land Potato Parties argued that the

Court should not extend the discovery deadline again, because Skyline Potato and the Intervening

Plaintiffs have presented no excuse for their failure to take Shawna Casey's deposition in May,

2012, when the parties were taking other deposition in Colorado.  See FTR 9:44:32-44:51

(Bohnhoff).  The Hi-Land Potato Parties asserted that it would be costly to make a second trip to

Colorado take her deposition.  See FTR at 9:44:52-44:58 (Bohnhoff).  The Hi-Land Potato Parties

argued that the parties who are seeking leave to take Shawna Casey's deposition out of time are the

same parties who identified her as having an equal amount of information as Shannon Casey.  See

FTR at 9:46:06-46:21 (Bohnhoff).  The Hi-Land Potato Parties contended that Skyline Potato and

the Intervening Plaintiffs should have been on notice of Shawna Casey's involvement in events

-15-

underlying this case at least by the time Tan-O-On Marketing filed its Amended Third-Party Complaint in October 2011.  See FTR at 9:46:23-47:19 (Bohnhoff).  The Hi-Land Potato Parties contended that the strategic decision not to take Shawna Casey's deposition in reliance on Shannon Casey's memory was unwise and does not qualify as good cause to re-open discovery.  See FTR at 9:47:30-48:05, 49:14-49:23 (Bohnhoff).  The Hi-Land Potato Parties argued that taking the deposition in Monte Vista would create a burden and expense that they should not have to endure. See FTR at 9:49:30-50:16 (Bohnhoff).

With regards to the depositions for Kroger Co. representatives, the Hi-Land Potato Parties argued that the main problem is that Skyline Potato and the Intervening Plaintiffs are now seeking testimony on different topics than those set forth in the original rule 30(b)(6) subpoena.  See FTR at 9:52:43-53:25 (Bohnhoff, Court).  The Hi-Land Potato Parties asserted that the request to take testimony about Kroger Co.'s use of the iTrade system is not consistent with the topics listed in the original rule 30(b)(6) deposition.  See FTR at 9:53:20-53:40 (Bohnhoff, Court).  The Hi-Land Parties also argued that the requirements necessary to procure and use a Kroger Co. vendor number do not fall within the topic identified as use of Tan-O-On Marketing's particular Kroger Co. vendor number.  See FTR at 9:53:40-54:20 (Court, Bohnhoff).  The Hi-Land Potato Parties then requested that, if the Court grants the Motion to Take Depositions as to depositions for Kroger Co. representatives, the Court should limit those depositions to the topics set forth in the original rule 30(b)(6) subpoena.  See FTR at 9:54:50-55:10 (Bohnhoff).  The Hi-Land Potato Parties stated that they would suffer prejudice if the Court permitted the depositions to be on a broader range of topics, because the depositions would be happening at a late stage in the case and could trigger a need for rebuttal discovery.  See FTR at 9:55:15-56:00 (Bohnhoff).  The Hi-Land Potato Parties represented that extending the discovery deadline to accommodate additional discovery would create a need to

push back other deadlines, such as the deadline to file summary judgment motions.  See FTR at 9:56:03-56:31 (Bohnhoff).  The Hi-Land Potato Parties argued that, although they would also like additional discovery to take a deposition of Tan-O-On Marketing's accountant, they would prefer that discovery end.  See FTR at 9:57:00-58:30 (Bohnhoff, Court).

With regards to the Kroger Co. vendor number, Tan-O-On Marketing stated that Mercuri explained that she uses the Kroger Co. vendor number to keep track of sales, while Kroger Co.'s risk management division uses the Kroger Co. vendor number in a different manner to account for and to reduce financial risks to Kroger Co.; Tan-O-On Marketing noted that the iTrade system plays a large role in the risk management division's actions.  See FTR at 10:04:00-05:16 (Robinson).  Tan-O-On Marketing represented that Shannon Casey's inability to translate to the parties the significance of the iTrade transactions makes it highly difficult to understand transactions that occurred with Kroger Co.  See FTR at 10:05:16-05:50 (Robinson).  Tan-O-On Marketing argued that Mercuri's role in tracking the Kroger Co. vendor number is different from the role that Kroger Co.'s risk management division plays in gathering information through iTrade; Tan-O-On Marketing asserted that this situation creates a need to take the deposition of a Kroger Co. representative about the iTrade system.  See FTR at 10:05:52-06:15 (Robinson).  Tan-O-On Marketing noted that the representative who would testify about the iTrade system is the witness which it would request Kroger Co. to identify.  See FTR at 10:06:00-06:20 (Robinson).

Skyline Potato stated that other depositions scheduled to occur while the parties were in Colorado to take Shannon Casey's deposition had to be cancelled to save the parties financial costs. See FTR at 10:08:24-08:50 (Jaramillo).  Skyline Potato argued that it had made a good-faith attempt to arrange with other counsel for Shawna Casey's deposition.  See FTR10:08:58-09:07 (Jaramillo). Skyline Potato stated that it would not object to limitations on the scope of the depositions to avoid

harassing Shawna Casey, because it is seeking information regarding only her business involvement in this case.  See FTR at 10:09:10-09:44 (Jaramillo).

The Intervening Plaintiffs argued that the impact Shawna Casey's deposition would have on the other deadlines in the case is not a significant problem, because the parties could depose the Kroger Co. representatives within the next thirty days.  See FTR at 10:11:13-12:00 (Esquivel).  The Court noted that it did not appear that any of the topics listed in the original rule 30(b)(6) subpoena appeared to include the use of the iTrade system.  See FTR at 10:13:31-14:07 (Court).  The Intervening Plaintiffs stated that they believed Shannon Casey would have been able to testify about the iTrade system in more detail given his significant involvement with using Tan-O-On Marketing's Kroger Co. vendor number.  See FTR at 10:14:08-14:55 (Esquivel).  The Court stated that it was not sure how the Intervening Plaintiffs had arrived at the conclusion that Shannon Casey would be knowledgeable about Kroger Co.'s use of the iTrade system.  See FTR at 10:14:56-15:10 (Court).  The Intervening Plaintiffs related that they expected that Shannon Casey would have been able to testify about the purpose of the iTrade system.  See FTR at 10:15:10-16:06 (Esquivel).  The Intervening Plaintiffs stated that they sought to take depositions from Kroger Co. representatives regarding the use of Kroger Co. vendor numbers and the use of the iTrade system.  See FTR at 10:16:05-16:16 (Court, Esquivel).

The Court stated that it would grant in part and deny in part the Motion to Take Depositions.  See FTR at 10:16:23-16:25 (Court).  The Court explained that it would grant the motion as to permitting the Kroger Co. rule 30(b)(6) deposition to continue on topics listed in the original subpoena, indicating that Kroger Co. would need to produce a representative who can testify about the use of the Kroger Co. vendor number issued to Tan-O-On Marketing since August 2009.  See FTR at 10:16:26-16:52 (Court).  The Court clarified that authentication of the data contained in the

spreadsheets Kroger Co. had produced in discovery was a topic within the scope of the earlier request for information about the use of a Kroger Co. vendor number.  See FTR at 10:18:53-19:30 (Esquivel, Court).  The Court then stated that it would otherwise deny the motion.  See FTR at 10:16:58-17:03 (Court).  With regards to Shawna Casey, the Court stated that it appeared that the parties had known she might be a potential witness at an early stage in the case and related that, if the Court allowed her deposition to go forward, the Court would be permitting parties' strategic choices not to take her deposition to control the discovery schedule.  See FTR at 10:17:04-17:59 (Court).  The Court also said that it would deny the request to take a deposition of a Kroger Co. representative who could testify about the iTrade system, because the original rule 30(b)(6) request had not identified that subject as a topic.  See FTR at 10:18:00-18:24 (Court).  The Court stated that it appeared the parties knew that Kroger Co. has information about the system before the discovery deadline.  See FTR at 10:18:01-18:24 (Court).

## RELEVANT LAW REGARDING DISCOVERY

"Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers 'the purpose discovery is intended to serve -- advancing the quest for truth.'"  Trujillo v. Bd. of Educ. of Albuquerque Pub. Schs., Nos. 02-1146 and 03-1185, 2007 WL 1306560, at *2 (D.N.M. Mar. 12, 2007)(Browning, J.)(quoting Taylor v. Illinois, 484 U.S. 400, 430 (1988)).  "Discovery is also, ideally, a self-executing system."  Mann v. Fernandez, 615 F.Supp.2d 1277, 1284 (D.N.M. 2009)(Browning, J.).  "A spirit of cooperation between opposing counsel is thus important and generally results in the filing of fewer discovery motions, reduction in the costs of litigation, and conservation of limited judicial resources."  Mann v. Fernandez, 615 F.Supp.2d at 1284.  "Sometimes, though, the discovery system breaks down."  Mann v. Fernandez, 615 F.Supp.2d at 1284.  "Determining whether to reopen discovery requires striking a delicate balance between the

interests of efficiency and accountability on the one hand, and a recognition of the importance of discovery for resolving cases on the merits on the other." Mann v. Fernandez, 615 F.Supp.2d at 1284.

1.        **Scheduling Orders.**

"The District Court has wide discretion in its regulation of pretrial matters." Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accord Street v. Curry Bd. of Cnty. Comm'rs, No. 06-0776, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

"The United States Court of Appeals for the Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are all related." Montoya v. Sheldon, No. 10-0360, 2012 WL 1132505, at *4 (D.N.M. March 20, 2012)(Browning, J.). As the Court has stated in the past: "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cnty. Comm'rs, 2008 WL 2397671, at *6. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Services Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j). The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would appear to require <u>at least as much</u> as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting <u>Putnam v. Morris</u>, 833 F.2d 903, 905 (10th Cir. 1987))(internal quotation marks omitted).  The Tenth Circuit explained that <u>Putnam v. Morris</u> "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  <u>In re Kirkland</u>, 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the good cause standard primarily considers the diligence of the party . . . [.] The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  <u>Pulsecard, Inc. v. Discover Card Servs. Inc.</u>, 168 F.R.D. at 301 (alteration in original)(internal quotation marks omitted).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  <u>Kee v. Fifth Third Bank</u>, No. 2:06-cv-00602-DAK-PMW, 2008 WL 183384, at *1 (Jan. 17, 2008 D. Utah).  Judge Kimball reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  <u>Kee v. Fifth Third Bank</u>, 2008 WL 183384, at *1.

## 2.    <u>Reopening Discovery.</u>

In <u>Smith v. United States</u>, the Tenth Circuit discussed the factors courts should consider in determining whether to reopen discovery.  These factors include:

1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169 (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir. 1984); Wilk v. Am. Med. Ass'n, 719 F.2d 207, 232 (7th Cir. 1983); Geremia v. First Nat'l Bank of Bos., 653 F.2d 1, 5-6 (1st Cir. 1981)).   The United States Court of Appeals for the Fifth Circuit considers four elements to determine whether a court should modify a scheduling order: (i) the explanation for the party's failure to meet the deadline; (ii) the importance of what the court is excluding; (iii) the potential prejudice if the court allows the thing that would be excluded; and (iv) the availability of a continuance to cure such prejudice.   See S&W Enters., LLC v. S. Trust Bank of Ala., 315 F.3d 533, 536 (5th Cir. 2003)).

## ANALYSIS

The Court will grant in part and deny in part the Motion to Take Depositions.  The Court will not permit Skyline Potato and the Intervening Plaintiffs to take Shawna Casey's deposition.  The Court will grant Skyline Potato and the Intervening Plaintiffs leave to depose  Kroger Co. representatives consistent with the specified topics in their previous subpoena under rule 30(b)(6) of the Federal Rules of Civil Procedure.  Skyline Potato and the Intervening Plaintiffs may depose Kroger Co. representatives regarding the use of the Kroger Co. vendor number issued to Tan-O-On Marketing but may not ask questions during the depositions regarding the use of Kroger Co.'s iTrade system.

## I.   THE COURT WILL NOT PERMIT SKYLINE POTATO AND THE INTERVENING PLAINTIFFS TO TAKE SHAWNA CASEY'S DEPOSITION.

The Court concludes that it is not appropriate to re-open discovery for the parties to take

Shawna Casey's deposition.  In <u>Smith v. United States</u>, the Tenth Circuit discussed the factors to be considered in determining whether to reopen discovery.  These factors include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169

First, trial is imminent in this case.  The trial is set for October 22, 2012.  <u>See</u> Order Rescheduling Trial at 2.  Furthermore, the Court will likely be handling various dispositive motions in the months proceeding trial -- motions which will be difficult for the parties to file if discovery remains open.  Thus, the first factor weighs against re-opening discovery.  Second, the Motion to Take Depositions is opposed.  Thus, the second factor weighs against re-opening discovery.  Third, the Hi-Land Potato Parties and the RPE, Inc. Parties have persuasively argued that they will face prejudice if the Court permits Shawna Casey's deposition.  The Hi-Land Potato Parties and the RPE, Inc. Parties have articulated that additional travel costs will become necessary to take the deposition in Monte Vista and that they have also had to forego some discovery to comply with the discovery deadline.  They have also correctly noted that discovery in this case has proceeded for a particularly long period of time and that the Court has extended the discovery deadlines various times.  Requiring the parties to spend additional time in discovery will result in additional financial burdens on the parties.  Thus, the third factor weighs against re-opening discovery.

Fourth, Skyline Potato and the Intervening Plaintiffs were not diligent in obtaining the discovery within the deadlines that the Court established.  There has been ample time to conduct discovery in this case, because the Court has enlarged the original September 1, 2011 deadline twice.

Skyline Potato and the Intervening Plaintiffs made a guess about what the Caseys knew, and made a professional decision not to depose Shawna Casey. The Court should not relieve Skyline Potato and the Intervening Plaintiffs of the consequences of this strategic decision, and should not shift the burden and costs of the deposition to the Hi-Land Potato Parties and the RPE, Inc. Parties. While the Court does not fault Skyline Potato and the Intervening Plaintiffs for trying to arrange with the other parties a mutually agreeable time to take Shawna Casey's deposition, see D.N.M.LR-Civ. 30.1 ("Counsel must confer in good faith regarding scheduling of depositions before serving notice of deposition."), they had a brief window where they could have served a subpoena on Shawna Casey in a timely manner to take her deposition in the days following Shannon Casey's deposition on May 15, 2012. The discovery deadline is June 4, 2012. Rule 30(b)(1) provides that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." Fed. R. Civ. P. 30(b)(1). The local rules set a minimum of fourteen days as the required notice under rule 30(b). See D.N.M.LR-Civ. 30.1 ("Service of notice of deposition in accordance with Fed. R. Civ. P. 30(b) must be made at least fourteen (14) days before the scheduled deposition."). An alternative course of action, if saving costs for the parties was a concern, would have been to subpoena both Shannon and Shawna Casey for depositions, and then not to pursue Shawna Casey's deposition if Shannon Casey provided all the necessary information. Thus, the fourth factor weighs against re-opening discovery to take Shawna Casey's deposition. Fifth, it was foreseeable that the discovery Skyline Potato and the Intervening Plaintiffs seek would be necessary well before the discovery deadline. All of the parties identified Shawna Casey as a potential witness in the JSR, which the parties filed on March 1, 2011. See JSR at 6-8. The Court concludes that Skyline Potato and the Intervening Plaintiffs had notice of the potential need to take Shawna Casey's deposition long before the discovery deadline. Thus, the fifth factor weighs against re-opening discovery. Sixth, none of

the parties dispute that Shawna Casey's deposition is likely to lead to relevant evidence, particularly

considering Shannon Casey's lack of knowledge regarding the events underlying this case.  Thus,

the sixth factor weighs in favor of re-opening discovery to take Shawna Casey's deposition.

In conclusion, five factors weigh against re-opening discovery to take Shawna Casey's

deposition and only one factor weighs in favor of re-opening discovery for that purpose.  The Court,

therefore, believes that re-opening discovery to take Shawna Casey's deposition is not appropriate.

Consequently, the Court will not permit Skyline Potato and the Intervening Plaintiffs to take Shawna

Casey's deposition beyond the discovery deadline of June 4, 2012.

## II.   THE COURT WILL GRANT SKYLINE POTATO AND THE INTERVENING PLAINTIFFS LEAVE TO TAKE THE DEPOSITION OF KROGER CO. REPRESENTATIVES REGARDING TOPICS IDENTIFIED IN THEIR ORIGINAL RULE 30(b)(6) SUBPOENA.

It is appropriate to re-open discovery to permit the parties to take depositions of Kroger Co.

representatives consistent with the topics listed in the previous rule 30(b)(6) subpoena.  In Smith v.

United States, the Tenth Circuit discussed the factors to be considered in determining whether to

reopen discovery.  These factors include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169

First, trial is imminent in this case.  The trial is set for October 22, 2012.  See Order

Rescheduling Trial at 2.  Furthermore, the Court will likely be handling various dispositive motions

in the months proceeding trial -- motions which will be difficult for the parties to file if discovery

remains open.  Thus, the first factor weighs against re-opening discovery, although the Court can

-25-

reduce the burden if the Court limits the scope of the depositions to topics identified in the original rule 30(b)(6) subpoena.  Second, the Motion to Take Depositions is opposed.  Thus, the second factor weighs against re-opening discovery.  Third, the Hi-Land Potato Parties and the RPE, Inc. Parties have not identified any prejudice that they will face if a deposition of Kroger Co. representatives goes forward on the topics listed in the original rule 30(b)(6) subpoena.  Thus, the third factor weighs in favor of re-opening discovery.

Fourth, Skyline Potato and the Intervening Plaintiffs have been diligent in obtaining the deposition from a Kroger Co. representative regarding use of the Kroger Co. vendor number.  In their 30(b)(6) subpoena to Kroger Co. dated April 20, 2012, they listed the use of the Kroger Co. vendor number issued to Tan-O-On Marketing since August 2009 as a topic for the deposition of Kroger Co.'s representative.  See Kroger Subpoena at 17.  Kroger Co. is not a party to this case. Kroger Co. named Mercuri as the appropriate corporate representative to give testimony on the requested matters, but the parties have acknowledged that Mercuri did not have knowledge on some aspects of the listed topics.  The Intervening Plaintiffs have represented that they then, rather than resorting to filing a motion with the Court, sought to have Kroger Co. identify another representative, which they represent Kroger Co. did not do until May 24, 2012.  See FTR 9:23:49-24:05 (Esquivel).  They have had some trouble communicating with Kroger Co. and have had to work heavily with one of the paralegals in Kroger Co.'s legal department.  When the Intervening Plaintiffs requested potential dates from the other parties to take another deposition, it appears that the other parties did not work with the Intervening Plaintiffs to arrange a deposition.  If the Intervening Plaintiffs had filed a motion to compel, no one could have complained.  It does not seem fair to punish the Intervening Plaintiffs for trying to work out the issue with Kroger Co. and the other parties rather than filing a motion that would require the use of both the Court's and the

parties' time.  The Court concludes that the Intervening Plaintiffs acted diligently in pursuing the deposition of a Kroger Co. representative who could testify regarding the use of Tan-O-On Marketing's Kroger Co. vendor number.  The Intervening Plaintiffs have represented that the data in the spreadsheets Kroger Co. produced during discovery is a related topic, because the data portrays sales using Tan-O-On Marketing's Kroger Co. vendor number.  The parties have not contested that assertion, but rather oppose a deposition regarding Kroger Co.'s use of the iTrade system.  Thus, the fourth factor weighs  in favor of re-opening discovery to take the deposition of a Kroger Co. representative who can testify about use of the Kroger Co. vendor number issued to Tan-O-On Marketing since August 2009.

On the other hand, the fourth factor does not weigh in favor of re-opening discovery to take the deposition of a Kroger Co. representative who can testify about Kroger Co.'s use of the iTrade system.  Skyline Potato and the Intervening Plaintiffs have not been diligent in obtaining a deposition from a Kroger Co. representative on this topic.  In their original rule 30(b)(6) subpoena, they did not identify use of the iTrade system as a topic on which they sought deposition testimony. See Kroger Subpoena at 17.  At the hearing, the Intervening Plaintiffs related that they need deposition testimony on this topic in light of Shannon Casey's lack of knowledge regarding the iTrade system.  The Court concludes that, given that Kroger Co. appears to be heavily involved in administration of the iTrade system, it was evident before Shannon Casey's deposition that a Kroger Co. representative would be able to testify about the iTrade system.  Thus, the topic could have been identified in the earlier 30(b)(6) subpoena.  The fourth factor weighs against re-opening discovery to depose a Kroger Co. representative to obtain information about the use of the iTrade system.

Fifth, it was not foreseeable that Skyline Potato and the Intervening Plaintiffs would need additional time to take the deposition of a Kroger Co. representative who could testify about the use

of Tan-O-On Marketing's Kroger Co. vendor number.  In response to the rule 30(b)(6) subpoena, Kroger Co. identified Mercuri as the representative with knowledge regarding this information. Mercuri was unable to provide, however, the information sought at her deposition on May 9, 2012.[5] The Court concludes that the delay in obtaining the deposition of a Kroger Co. representative regarding use of the Kroger Co. vendor number was not the Intervening Plaintiffs' fault.  Thus, the fifth factor weighs in favor of re-opening discovery to take the deposition of a Kroger Co. representative who can testify about use of the Kroger Co. vendor number.  Sixth, it is likely that the deposition of a Kroger Co. representative who can testify about use of the Kroger Co. vendor number will lead to relevant evidence.  Many of the allegations in this case relate to what occurred with Tan-O-On Marketing's Kroger vendor number.  Thus, the sixth factor weighs in favor of re-opening discovery.

In conclusion, the applicable factors weigh in favor of re-opening discovery to depose Kroger Co. representatives who can testify about use of Tan-O-On Marketing's Kroger Co. vendor number as well as the data contained in spreadsheets that Kroger Co. produced.  On the other hand, the applicable factors weigh against re-opening discovery to allow for the deposition of Kroger Co. representatives who can testify about use of the iTrade system.  That topic is outside the scope of the original rule 30(b)(6) subpoena.

**IT IS ORDERED** that Plaintiff Skyline Potato Company and Intervening Plaintiffs' Joint Motion for Leave to Take the Deposition of Non-Parties Shawna Casey, Stephanie Merritt, and Unidentified Kroger Corporate Representative, filed May 25, 2012 (Doc.  177), is granted in part

---

[5]There is no record of Kroger Co.  identifying Mercuri as the corporate representative or of her deposition.  The parties do not dispute, however, that Kroger Co. named Mercuri as a corporate representative in response to the rule 30(b)(6) subpoena.  The parties also do not dispute that she could not provide the information that the Intervening Plaintiffs seek.

and denied in part.  The Court will not re-open discovery to permit the parties to depose Shawna

Casey.  The Court will re-open discovery to permit the parties to depose a Kroger Co. representative

regarding the use of Defendant Tan-O-On Marketing, Inc.'s Kroger Co. vendor number, the vendor

number system The Kroger Co. uses, and the data contained in spreadsheets that Kroger Co.

produced during discovery.  The Court will not re-open discovery to permit the parties to depose a

Kroger Co. representative regarding the iTrade system.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James T. Burns
Heather S. Jaramillo
Patrick J. Griebel
Albuquerque Business Law, P.C.
Albuquerque New Mexico

-- and --

Justin P. Pizzonia
Johanna A. Pickel
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Gordon H. Rowe III
The Rowe Law Firm, P.C.
Albuquerque, New Mexico

-- and --

Henry M. Bohnhoff
Leslie McCarthy Apodaca
Melanie B. Stambaugh
Rodey Dickason Sloan Akin & Robb, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants and Third-Party Defendants Hi-Land Potato Company,*
      *Inc. and Carl Worley*

Gordon H. Rowe III
The Rowe Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Mark Lounsbury and Bill Metz*

Shannon Robinson
Albuquerque, New Mexico

    *Attorney for Defendants and Third-Party Plaintiffs Tan-O-On Marketing Inc., Gerald*
      *Anderson, and Julie Anderson*

Justin P. Pizzonia
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

-- and --

Katy Koestner Esquivel
Meuers Law Firm, PL
Naples, Florida

    *Attorneys for Intervening Plaintiffs Folson Farm Corporation; Potandon Produce,*
      *L.L.C.; Mart Produce Corporation; Billingsley Produce Sales, Inc.; Alsum*
      *Produce, Inc.; and Peterson Bros. River Valley Farms, Inc.*

Benjamin F. Feuchter
William Spencer Reid
Keleher & McLeod
Albuquerque, New Mexico

    *Attorneys for Defendants and Third-Party Defendants RPE, Inc. and Russell Wysocki*