# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SKYLINE POTATO COMPANY, INC.,

      Plaintiff,

vs.                                                                 No. CIV 10-0698 JB/RHS

HI-LAND POTATO COMPANY, INC.,
CARL WORLEY, GERALD R. ANDERSON,
and JULIE A. ANDERSON,

      Defendants,

and

TAN-O-ON MARKETING, INC.,

      Defendant/Third-Party Plaintiff,

vs.

HI-LAND POTATO COMPANY, INC.,
and CARL WORLEY,

      Third-Party Defendants.

FOLSON FARM CORPORATION,
MART PRODUCE CORPORATION,
BILLINGSLEY PRODUCE SALES, INC.,
ALSUM PRODUCE, INC., and
PETERSON BROS. RIVER VALLEY
FARMS, INC.,

      Intervening Plaintiffs,

vs.

TAN-O-ON MARKETING, INC., and
HI-LAND POTATO COMPANY, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff and Intervening Plaintiffs' Objections to Defendant Hi-Land Potato Company's Exhibit List, filed Oct. 12, 2012 (Doc. 302)("Plaintiffs' Objections"); (ii) the Defendants and Third-Party Defendants Hi-Land Potato Company, Inc.'s and Carl Worley's Objections to Defendant and Third-Party Plaintiff Tan-O-On Marketing, Inc.'s Exhibits, filed Oct. 12, 2012 (Doc. 306)("Hi-Land's TMI Objections"); and (iii) the Defendants and Third-Party Defendants Hi-Land Potato Company, Inc.'s and Carl Worley's Objections to Plaintiff and Intervening Plaintiffs' Exhibits, filed Oct. 12, 2012 (Doc. 307)("Hi-Land's Plaintiff Objections").  The Court held a hearing on the parties' objections on October 19, 2012.  The primary issues are whether the Court should exclude certain Exhibits the parties offer for admission at the trial, because they are inadmissible under the Federal Rules of Evidence on grounds of: (i) hearsay; (ii) authentication; (iii) relevance; and (iv) a party's failure to produce the documents during discovery.   The Court will sustain in part and overrule in part the parties' objections.  The Court will exclude Defendant and Third-Party Defendants Hi-Land Potato Co. and Carl Worley's Exhibit CE -- their expert's report -- because it is inadmissible hearsay under rule 802.  The Court will conditionally admit their Exhibits BE and BF, subject to Hi-Land Potato and Worley properly laying the foundation necessary under rule 803(6).  The Court will admit their Exhibits BQ-CD for the limited purpose of showing that Skyline Potato and the Folson Farm Group had notice of their ability to submit claims against the Caseys in their bankruptcy proceedings, but not for the truth of the matter asserted within the Exhibits. The Court will exclude Tan-O-On Marketing Co.'s Exhibits 4F, 4K, 8, 9, 14, and 18 pursuant to rule 802.  The Court will exclude Plaintiffs Skyline Potato Company, Inc. and the Intervening Plaintiffs Folson Farm Corporation's, Mart Produce Corporation's, Alsum Produce Sales, Inc.'s,

Peterson Bros. River Valley Farms, Inc.'s, and Billingsley Produce Sales, Inc.'s Exhibits 2, 3, 5, 16, and 32 pursuant to rule 802. The Court will admit the Kroger Co. documents within Skyline Potato and the Folson Farm Group's Exhibit 30 for the limited purpose of evidencing Kroger Co.'s business practices and what its books showed, and the affidavits therein for the purpose of authentication, but not for the purpose of the truth of the statements that Shannon Casey sent to Kroger Co.

## FACTUAL BACKGROUND

The Court has explained the facts of this case in four prior Memorandum Opinion and Orders: (i) the Memorandum and Opinion and Order, filed July 4, 2012 (Doc. 214), see Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc., 2012 WL 2922751, at *2 (D.N.M. July 4, 2012); (ii) the Memorandum Opinion and Order, filed June 12, 2012 (Doc. 189), see Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc., CIV 10-0698 JB/RHS, 2012 WL 2384087, at **1-4 (D.N.M. June 12, 2012); (iii) the Memorandum Opinion and Order, filed October 12, 2012 (Doc 101); and (iv) the Memorandum and Opinion and Order, filed Dec. 6, 2012 (Doc. 331), see Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc., 2012 WL 6622654, at **1-3 (D.N.M. Dec. 6, 2012). The Court incorporates by reference those discussions of the factual background, and sets forth additional facts pertinent to the issues of this Memorandum Opinion and Order.

Skyline Potato and the Intervening Plaintiffs Folson Farm Corporation, Mart Produce Corporation, Alsum Produce Sales, Inc., Peterson Bros. River Valley Farms, Inc., and Billingsley Produce Sales, Inc. (collectively the "Folson Farm Group"), allege that Defendants Tan-O-On Marketing, Inc. accepted delivery of Skyline Potato's and the Folson Farm Group's produce, and delivered the potatoes to various buyers, but did not pay Skyline Potato and the Folson Farm Group for the produce. See Petition for Enforcement of USDA PACA Order and Award of

- 3 -

Damages; Complaint for Violation of Federal Unfair Trade Practices Provision in PACA (7 USC [sic] 499b), Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Money Owed on Open Account, and Prayer for Declaratory Relief and Piercing of the Corporate Veil ¶¶ 22-25, at 5, filed July 23, 2010 (Doc. 2)("Skyline Complaint"); Complaint in Intervention ¶¶ 7-16, at 4-6, filed July 8, 2011 (Doc. 60)("Folson Farm Group Complaint"). Skyline Potato alleges that Hi-Land Potato and Carl Worley are liable for the same amount and on the same counts, because "Tan-O-On was acquired by Hi-Land Potato Company, Inc." Skyline Complaint ¶ 7, at 3.   The Folson Farm Group alleges that Hi-Land Potato is liable to them for payment for the produce that they delivered to Tan-O-On Marketing, because Hi-Land Potato and Worley received assets and retained those assets, which were assets of the statutory trust created pursuant to § 499e of the Perishable Agricultural and Commodities Act, 7 U.S.C. §§ 499a - 499t ("PACA").   See Folson Farm Group Complaint ¶¶ 40-44, at 10-11.   Tan-O-On Marketing alleges that Hi-Land Potato and Worley misappropriated its Kroger Co. vender number, and in the process, took over Tan-O-On Marketing's business operation.   See Response to Motion to Dismiss Fraud Claims, filed Jan. 23, 2012 (Doc. 96).

## **PROCEDURAL BACKGROUND**

On October 12, 2012, Skyline Potato and the Folson Farm Group filed the Plaintiffs' Objections, objecting to twenty exhibits that Hi-Land Potato intends to offer at trial on grounds of: (i) relevance; (ii) hearsay; (iii) authenticity; (iv) best evidence; and (v) Hi-Land Potato's and Worley's failure to disclose the proffered exhibits in discovery.   See Plaintiffs' Objections at 2-3. Skyline Potato and the Folson Farm Group reserve the right to supplement, modify, and withdraw these objections, to object to the limited admissibility of any exhibits at trial, and "to

interpose a specific objection at trial to any exhibit where a copy of the exhibit was not provided prior to the filing of these objections." Plaintiffs' Objections at 3.

On October 12, 2012, Hi-Land Potato and Worley filed their Hi-Land's TMI Objections, objecting to nineteen of Tan-O-On Marketing's exhibits on grounds of: (i) relevance (including under rule 403); (ii) authentication; (iii) foundation; (iv) hearsay; and (v) Tan-O-On Marketing's failure to disclose the proffered exhibits in discovery. See Hi-Land's TMI Objections at 1-3. Also on October 12, 2012, Hi-Land Potato and Worley filed their Hi-Land's Plaintiff Objections, objecting to fourteen of Skyline Potato's and the Folson Farm Group's exhibits on grounds of: (i) hearsay; (ii) relevance (including rule 403); (iii) authentication; (iv) foundation; and (v) Skyline Potato's and the Folson Farm Group's failure to disclose the exhibits in discovery. See Hi-Land's Plaintiff Objections at 1-3. Hi-Land Potato and Worley reserve the right in both their Hi-Land Potato's TMI Objections and their Hi-Land Potato's Plaintiff Objections to supplement, modify, and withdraw these objections, to object to the limited admissibility of any exhibits at trial, and to interpose a specific objection at trial to any exhibit where a copy of the exhibit was not provided prior to the filing of these objections. See Hi-Land's TMI Objections at 3-4; Hi-Land's Plaintiff Objections at 3-4.

At the hearing on October 19, 2012, the Court heard the parties' objections to the exhibits by going through the exhibit lists and allowing the parties' to argue their objections as the exhibits to which they object came up. The Court proceeded through Skyline Potato's and the Folson Farm Group's Exhibit List, and the first exhibit for which the parties argued admission was Exhibit 2, the December 28, 2009 Letter from Shannon Casey to Terry Wright, to which Hi-Land Potato and Worley objected on hearsay grounds. See Transcript of Hearing at 12:12-13

(taken Oct. 19, 2012)(Court)("Tr.").[1]  Skyline Potato and the Folson Farm Group argued that Exhibit 2 is not hearsay, because it will be offered to impeach Shannon Casey, a non-party witness whose deposition they anticipate will be read into the record at trial.  See Tr. at 12:17-13-3 (Jaramillo, Court).  They asserted that they would introduce the letter into evidence during Terry Wright's testimony, and that the letter would contradict Hi-Land Potato's and Worley's assertion that they did not have knowledge of the possibility of a merger between Hi-Land Potato and Tan-O-On Marketing.  See Tr. at 13:8-24 (Jaramillo, Court).  Should the Court rule the letter inadmissible on those grounds, Skyline Potato and the Folson Farm Group argued that, in light of Terry Wright's testimony regarding his receipt of the letter, it is admissible under rule 807 -- the residual hearsay exception.  See Tr. at 13:12-16 (Jaramillo).  Hi-Land Potato and Worley argued that, not only does the letter lack the circumstantial guarantees of trustworthiness rule 807 requires for an exhibit's admission, but Shannon Casey, in his deposition testimony, unequivocally rejected the truth of the letter when asked about it.  See Tr. at 14:16-15:1 (Bohnhoff, Court).  The Court asked whether it could be admissible for any purposes other than the truth, to which Hi-Land Potato and Worley conceded that it could come in for impeachment purposes, because he admitted that it was a lie, and also admitted that is how Skyline Potato and the Folson Farm Group used it at the hearing.  See Tr. at 15:10-23, 16:23-24 (Bohnhoff, Court).  Tan-O-On Marketing asserted that it was important to view the letter in the context of not only this litigation, but the events as a whole, including Shannon Casey's bankruptcy proceeding, in which he did not state that the letter was a lie, but that it was his business plan and that Worley knew about the plan.  See Tr. at 17:7-25 (Robinson, Court).  The Court stated that, because the

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

letter is written by Shannon Casey, who it does not appear will be testifying at trial, the letter is hearsay, and it does not appear to fit under any exception to hearsay that would allow for it to come in for the truth.  See Tr. at 19:13-18 (Court).  The Court ruled that it can, however, be used for impeachment purposes.  See Tr. at 20:1-2 (Court).

In regards to Exhibit 3 -- an electronic mail transmission from Terry Wright, a Tan-O-On Marketing sales agent, to Tammy Wahlberg, a potato supplier employee (dated Jan. 11, 2010) -- Skyline Potato and the Folson Farm Group argued that it falls under an exception to the exclusion of hearsay, because it represents Wright's present-sense impression.  See Tr. at 20:10-12 (Jaramillo).  They contended that, because Wright wrote the email shortly after he received notice that he was being terminated, the letter falls under the present-sense impression hearsay exception.  See Tr. at 20:15-22 (Jaramillo).  Hi-Land Potato and Worley responded by arguing that, because Wright has admitted that he received Shannon Casey's letter on December 31, 2009, and Wright wrote the electronic mail transmission ten to eleven days later, it fails to meet the temporal requirement for the present-sense impression exception.  See Tr. at 20:24-21:8 (Bohnhoff).  Hi-Land Potato and Worley pointed out that, in addition to the first layer of hearsay, the statements in the electronic mail transmission relaying Shannon Casey's statements from a letter that he had written to Wright are hearsay within hearsay, and that the Court should thus exclude the letter unless Wright can lay a proper foundation for those statements.  See Tr. at 21:9-22:1 (Bohnhoff).  The Court stated that, because Wright wrote the electronic mail transmission ten to eleven days after Wright received Shannon Casey's letter, the electronic mail transmission failed to qualify for the present-sense impression exception to hearsay, and denied admitting the electronic mail transmission unless and until Skyline Potato and the Folson Farm Group can provide the Court with law that says otherwise.  See Tr. at 22:5-9 (Court).  Skyline

Potato and the Folson Farm Group clarified that the letter that Wright received from Shannon Casey did not mention that the produce suppliers were not getting paid, and that it was only after talking to Shannon Casey on the telephone and being informed of the same that Wright sat down and wrote the electronic mail transmission that is Exhibit 3.  <u>See</u> Tr. at 22:10-17 (Jaramillo).  The Court stated that it still believed the electronic mail transmission fails to meet the present-sense impression exception, because Wright sat down at his computer after receiving the news from Shannon Casey and wrote a series of electronic mail transmissions, which precludes the Court from appropriately finding that the statement was made while or immediately after Wright receiving the information from Shannon Casey.  <u>See</u> Tr. at 22:18-23:1 (Court).

As to Exhibit 5 -- a letter from Wright to Shannon Robinson, Tan-O-On Marketing and the Andersons' attorney (dated Jan. 27, 2010) -- Skyline Potato and the Folson Farm Group argued that Exhibit 5 is included in the list only if Wright needs the information because he forgets it during his testimony at trial, and in that case it will be admissible under rule 803(5) as a recorded recollection.  <u>See</u> Tr. at 23:9-15 (Jaramillo).  Hi-Land Potato and Worley responded that object to the letter because the letter contains hearsay within hearsay and that this objection "is going to be a continuing problem with Terry Wright communications throughout, really, all of [Terry Wright's communications] that the plaintiffs [and Tan-O-On Marketing] are trying to get admitted . . . ."  Tr. at 23:18-21 (Bohnhoff).  Skyline Potato and the Folson Farm Group asserted that there are exceptions to hearsay that apply to all of the hearsay within hearsay statements that Hi-Land Potato and Worley contend are contained within the letter, and asked the Court to reserve ruling on its admissibility until those are presented at trial.  <u>See</u> Tr. at 24:11-17 (Jaramillo).  The Court ruled that it would exclude the document for the present time, but if, at trial, Wright cannot recall its contents, and if Skyline Potato and the Folson Farm Group are able

- 8 -

to meet all the elements to establish that it is a recorded recollection, the Court will allow them to read in the letter as 803(5) permits.  See Tr. at 25:1-11 (Court).

The Court admitted Exhibits 6-15 without objection.  See Tr. at 25:12-17 (Court).

Skyline Potato and the Folson Farm Group asserted that Exhibit 16 -- a series of electronic mail transmissions involving Folson Farm Group and Wright -- is admissible, because the statements are admissible under the present-sense impression exception to hearsay, and also under rule 801(c), because the statements are offered for their effect on the listener rather than for the truth of the statements asserted.  See Tr. at 25:25-26:14 (Jaramillo).  Hi-Land Potato and Worley asserted that, as with the previous letters involving Wright, these electronic mail transmissions contain various statements of others and are thus inadmissible as containing hearsay within hearsay.  See Tr. at 27:1-21 (Bohnhoff).  Skyline Potato and the Folson Farm Group added that they may, depending on Wright's trial testimony, be able to prove that the electronic mail transmissions meet the exception to hearsay for records of a regularly conducted activity.  See Tr. at 27:24-28:4 (Jaramillo).  The Court excluded Exhibit 6 for the present time. See Tr. at 29:1 (Court).  The Court stated, however, that it appeared as if it might be good for the parties to separate the electronic mail transmissions into different exhibits for each individual electronic mail transmission string and mark them accordingly before trial, so that, if Skyline Potato and the Folson Farm Group wished to offer a particular electronic mail transmission into evidence at trial, the Court at that time could go through the particular electronic mail transmission offered and rule on its admissibility in particular.  See Tr. at 28:5-25 (Court).

The Court admitted Exhibits 18-24, and Exhibits 26-27 without objection.  See Tr. at 29:4-8, 29:25 (Court).

In regard to Exhibit 25, Skyline Potato and the Folson Farm Group stated that it is, like Exhibit 16, a grouping of electronic mail transmission communications between Wright and the various Plaintiffs in the case, and represented that they would individually mark the electronic mail transmissions, as the Court recommended regarding Exhibit 16, and offer them at trial if needed.  See Tr. at 29:15-20 (Jaramillo, Court).  The Court asked Hi-Land Potato and Worley if they agreed to the procedure, and when they did, the Court stated that it would exclude both Exhibits 25 and 28, but that Skyline Potato and the Folson Farm Group could offer the individual electronic mail transmissions at trial for the Court to reconsider.  See Tr. at 29:22-30:2 (Court, Bohnhoff).

As to Exhibit 30 -- the Kroger Co. Affidavit, the Amended Kroger Co. Affidavit, and associated documents -- Skyline Potato and the Folson Farm Group asserted that, with regard to the objections on authentication, the documents are self-authenticating under rule 902(8) and have been acknowledged  pursuant to rule 902(11).  See Tr. at 30:5-13 (Jaramillo).  Similarly, Skyline Potato and the Folson Farm Group argued that, with regard to the hearsay objection, the documents meet the exception under rule 803(6), because they are Kroger Co.'s records of a regularly conducted activity.  See Tr. at 30:14-17 (Jaramillo).  Hi-Land Potato and Worley argued that these documents are inadmissible, because they were allegedly produced after Kroger Co. received a facsimile transmission from Shannon Casey on Hi-Land Potato letterhead -- of which Worley contends he had no knowledge and Shannon Casey was without authority to send -- that stated Tan-O-On Marketing was changing its name to Hi-Land Potato.  See Tr. at 30:22-31:24 (Bohnhoff).  Hi-Land Potato explained: "That document appears to be received by Kroger and then there are some forms that are filled out by Kroger people reflecting that name change and also making comments about consolidation of Tan-O-On into Hi-Land." Tr. at 32:2-

- 10 -

5 (Bohnhoff).   Hi-Land Potato and Worley asserted that, first and foremost, these documents contain hearsay within hearsay, and also that these documents raise more questions than they answer, such as why Kroger Co. believed there was a merger when the two companies had different tax identification numbers, and why it was a name change rather than there being any notation that Tan-O-On Marketing was shutting down.   <u>See</u> Tr. at 32:6-21 (Bohnhoff).   Hi-Land Potato and Worley contended that the affidavit upon which Skyline Potato and the Folson Farm Group base their argument that the documents are regularly conducted activities of Kroger Co. is insufficient, because, although it states that the documents were produced according to Kroger Co.'s regular practice when they receive a facsimile transmission, it does not provide information from which Skyline Potato and the Folson Farm Group can establish all elements required for 803(6) to apply.   <u>See</u> Tr. at 33:3-10 (Bohnhoff).   Additionally, Hi-Land Potato and Worley noted, Skyline Potato and the Folson Farm Group failed to provide the notice required for authentication of a record of a regularly conducted activity under 902(11), because they provided Hi-Land Potato and Worley with notice only on October 12, 2012 -- three days after the deadline to produce trial exhibits and only a week before this hearing -- is unreasonable.   <u>See</u> Tr. 33:18-20 (Bohnhoff).   In response, Tan-O-On Marketing stated: "If the merger letter is the smoking gun, this is a bomb, because if, in fact, it does come in as evidence, Judge, this case is all over for Hi-Land."   Tr. at 35:6-8 (Robinson).   Tan-O-On Marketing contended that these documents were evidence that, once Hi-Land Potato obtained Tan-O-On Marketing's Kroger Co. vender number, there was no need for a merger, because Hi-Land Potato had fraudulently and intentionally converted for its own use Tan-O-On Marketing's most valuable asset.   <u>See</u> Tr. at 35:8-24 (Robinson).   Tan-O-On Marketing asserted that the documents are records of a regularly conducted activity pursuant to rule 803(6), because it is the record of the activity by which a

- 11 -

company obtains a Kroger Co. vender number.  See Tr. at 36:19-25 (Robinson).  Skyline Potato

and the Folson Farm Group provided background to their efforts in trying to obtain these records,

and thus the necessary delay in providing notice of these records to Hi-Land Potato and Worley,

stating that they had subpoenaed Kroger Co. twice -- both in January and May 2012 -- had taken

the deposition of a Kroger Co. representative, and did not even know the documents existed until

one week before the hearing on the parties' summary judgment motions, and a day before the

parties were scheduled to depose a Kroger Co. representative.  See Tr. at 39:17-40:21 (Esquivel).

Skyline Potato and the Folson Farm Group stated that they cancelled the depositions right after

receiving the records, because Kroger Co.'s counsel informed them that Kroger Co. could not

find anyone with knowledge of the records that the parties could depose.  See Tr. at 40:14-41:7

(Court).  The Court inquired of Skyline Potato and the Folson Farm Group whether it would

agree that the facsimile transmission from Shannon Casey on the Hi-Land Potato letterhead is

not admissible under 803(6), to which they both agreed, and noted that is why the affidavit

distinguishes between the documents that Kroger Co. produced and those that it received from

Shannon Casey.  See Tr. at 42:15-25 (Court, Esquivel).  The Court then asked Skyline Potato and

Folson Farm Group whether, if rule 902(11) requires reasonable notice for documents to be self-

authenticating under this rule, that portion of the rule requires such notice so that the opposing

party may make inquiry about the documents' origins, and if so, whether Hi-Land Potato and

Worley were prejudiced here.  See Tr. at 43:4-16 (Court).  Skyline Potato and the Folson Farm

Group responded that regardless whether Hi-Land Potato and Worley were not given the

opportunity to receive all answers to the questions that they may have had regarding the

documents, because the documents were provided only days before the hearing, and because

Skyline and the Folson Farm Group immediately then provided the documents to Hi-Land Potato

and Worley, they provided the documents in a reasonable time, and no party gained any advantage with regard to the documents.  See Tr. at 43:17-23 (Esquivel).  The Court noted that, because Shannon Casey's statements and his facsimile transmission to Kroger Co. are hearsay for which the parties have not pointed the Court to an exception allowing their admissibility, his statements would not come in for the truth and the documents would therefore be admissible only for the limited purpose of showing Kroger Co.'s processes in assigning a Kroger Co. vender number.  See Tr. at 45:4-16 (Court).  The Court noted that this purpose did not appear to "have much probative value."  Tr. at 45:17-19 (Court).  Hi-Land Potato and Worley interjected that it is their position that the statements are not admissible at all under rule 803(6), because "they're simply repeating, relying on, adopting the hearsay that they got from Casey, and that's precisely the kind of double hearsay that the Tenth Circuit has advised courts is inadmissible under the business records exception."  Tr. at 47:1-5 (Bohnhoff).  The Court stated that it agreed with Hi-Land Potato and Worley's position, noting its ruling that any information in the documents which came from Shannon Casey is inadmissible for its truth, and that position is why the Court questions the documents' probative value.  See Tr. at 47:12-17 (Court).  Hi-Land Potato and Worley asserted that they now more clearly understood the Court's ruling, and agreed with the Court's position, and the Court thus ruled that while Shannon Casey's facsimile transmission is excluded for the truth of the matters asserted therein, the affidavits will come in for the purpose of authenticating the documents, and the attached documents will come in for the limited purpose of showing Kroger Co.'s business practices as a result of Shannon Casey's facsimile transmission.  See Tr. at 47:18-48:20 (Bohnhoff, Court).

The Court admitted Exhibit 31 without objection.  See Tr. at 49:6-8 (Court).  In regards to Exhibit 32 -- the Tan-O-On Marketing Audit Trail -- Skyline Potato and the Folson Farm

Group noted that the audit trail is a report that QuickBooks software compiled, which allows an auditor to understand a business' financial transactions of a business.  See Tr. at 49:12-17 (Jaramillo).  They argued that it is relevant for purposes of demonstrating Tan-O-On Marketing's recordkeeping habits -- "or lack thereof" -- and for demonstrating that the monies at issue were paid on a priority basis to Hi-Land Potato to the detriment of the Plaintiffs, and argued that the documents are an exception to excludable hearsay, because they are records of a regularly conducted activity.  Tr. at 49:18-50:4 (Jaramillo).  The Court inquired whether Sara Brown, a witness who will testify at trial, prepared the documents and whether, if so, she will be testifying as an expert.  See Tr. at 50:5-6 (Court).  Skyline Potato and the Folson Farm Group responded that Brown prepared the documents based on what she could recover from Tan-O-On Marketing's computer records, and that, to the best of their knowledge, she would be testifying, but not as an expert.  See Tr. at 50:7-9 (Jaramillo, Court).  Hi-Land Potato and Worley clarified that Exhibit 32 contained the QuickBooks record, but also different bookkeeping documents, and argued that it "is pretty clearly not a business record" as Tan-O-On Marketing did not prepare the document.  Tr. at 50:12-15 (Bohnhoff).  Hi-Land Potato and Worley pointed out that Brown created the report this summer or late spring, and is thus a document prepared in preparation for trial.  See Tr. at 50:12-24 (Bohnhoff).  In response to the Court's inquiry whether Brown could testify to the facts in the Audit Report as an expert without the documents coming into evidence, Hi-Land Potato and Worley noted that Brown was never disclosed as an expert in the case and, at a hearing in June, 2012, the parties agreed that she would not be testifying as an expert.  See Tr. at 51:12-16 (Court).  Tan-O-On Marketing contended that the report reflects how QuickBooks was used while the corporation was in business, and what Brown, who acted as Tan-O-On Marketing's Certified Personal Accountant from 2006 to 2007, recorded in the system.  See Tr.

- 14 -

at 51:24-52:20 (Robinson).  The Court denied the admission of Exhibit 32, reasoning that it was hearsay and that because it was created after litigation had begun, it did not qualify as a record of a regularly conducted activity.  See Tr. at 52:22-53:4 (Court).  The Court then admitted Exhibit 33 without objection.  See Tr. at 53:7-8 (Court).

Skyline Potato and the Folson Farm Group noted that Hi-Land Potato and Worley object to Exhibits 34-39 -- the depositions of Gerald Anderson, Candy Mercuri, Shannon Casey, Carl Worley, Carla Worley, and Sheryl Brown -- based on hearsay, relevance, and rule 32(a) of the Federal Rules of Civil Procedure.  See Tr.at 56:9-15 (Jaramillo, Court).  Skyline Potato and Folson Farm Group asserted that they listed the depositions out of "an abundance of caution" and that, if they need to introduce the depositions into evidence, they intend to comply with rule 32(a) of the Federal Rules of Civil Procedure.  See Tr. at 56:16-25 (Jaramillo).  Hi-Land Potato and Worley contended that, while the deposition testimony is of course admissible for impeachment purposes, Skyline Potato and the Folson Farm Group cannot use both the deposition testimony and live testimony of the witnesses whom they plan to have testify at trial, and they cannot use the prior deposition testimony to get into evidence all of the separately identified exhibits that were used in the depositions.  See Tr. at 57:3-21 (Bohnhoff).  The Court inquired whether the parties had already designated portions of the Caseys' depositions and Mercuri's deposition to be read into the record at trial, because they were all in agreement that they are unavailable.  See Tr. at 58:7-17 (Court, Bohnhoff).  Hi-Land Potato and Worley stated that the parties had stipulated to the admissibility of designated portions of their testimony.  See Tr. at 58:9-15 (Bohnhoff, Court).  Hi-Land Potato and Worley asserted that Skyline Potato and the Folson Farm Group cannot submit the Worleys' deposition testimony, and also call them as an adverse witness at trial; they assert that Skyline Potato and the Folson Farm Group can do one

- 15 -

or the other but not both.  <u>See</u> Tr. at 58:18-59:1 (Bohnhoff).  The Court asked them if Carl

Worley is still a party to this case, to which Hi-Land Potato and Worley responded that he is still

a named defendant in the case.  <u>See</u> Tr. at 59:17-20 (Court, Bohnhoff).  The Court inquired then

whether Skyline Potato and the Folson Farm Group had unrestricted abilities to introduce his

deposition testimony, regardless whether they call him as a witness at trial, because he is a party-

opponent.  <u>See</u> Tr. at 59:21-24 (Court).  Hi-Land Potato and Worley asserted that both calling

Carl Worley to testify and introducing his deposition testimony would be cumulative.  <u>See</u> Tr. at

59:58-60:2 (Bohnhoff).  The Court stated that Skyline Potato and the Folson Farm Group cannot

use Anderson's or Brown's deposition, as they are calling them as witnesses in their case-in-

chief; that the designated portions of Mercuri's and the Caseys' depositions would be admitted as

the parties stipulated; and that they could use Carla Worley's deposition as they wished, and

asked whether Carla Worley could be considered Hi-Land Potato's agent for hearsay purposes.

<u>See</u> Tr. at 60:5-11 (Court).  When Skyline Potato and the Folson Farm Group responded that it

was their understanding she was Hi-Land Potato's agent, the Court stated that her deposition

testimony likely also could be used as that of a party opponent.  <u>See</u> Tr. at 60:12-19 (Jaramillo,

Court).  The Court then stated that Skyline Potato and the Folson Farm Group need to send a

letter to Hi-Land Potato and Worley advising them of the exhibits that they wish to introduce

separately through the deposition testimony.  <u>See</u> Tr. at 60:20-23 (Court).

The Court then moved to Hi-Land Potato and Worley's proposed exhibits.  The Court

admitted Exhibit A without objection.  <u>See</u> Tr. at 62:4-5 (Court).  In regards to Exhibits B, C,

and D, Skyline Potato and the Folson Farm Group argued that the Court should exclude these

documents -- all corporate documents for Tan-O-On Marketing -- pursuant to rule 403, because

they "simply serve to waste the Court's time, cause undue delay and possibly confuse the issues .

. . ." Tr. at 62:7-12 (Jaramillo).  Hi-Land Potato and Worley responded that they are confused by Skyline Potato and the Folson Farm Group's objection to the proposed exhibits, because, along with Exhibits E, F, G, and H, they all relate to Tan-O-On Marketing's stock purchase agreement, and Tan-O-On Marketing identified many of the same exhibits, to which Skyline Potato and the Folson Farm Group are not objecting as offered by Tan-O-On Marketing.  See Tr. at 63:14-25 (Bohnhoff).  The Court admitted exhibits B, C, and D, noting that the stock purchase agreement is probative of the issue of Casey's purchase of Tan-O-On Marketing from Gerald and Julie Andersons, Tan-O-On Marketing's founders and owners.  See Tr. at 63:8-12 (Court).  In regard to Skyline Potato and the Folson Farm Group's objection to Exhibit W -- the TMI 2009 Year End Income Statement -- Hi-Land Potato and Worley withdrew the exhibit.  See Tr. at 63:15-16 (Bohnhoff).  The Court then admitted Exhibits E-V, X, Y, Z, and AA, without objection.  See Tr. at 63:18-20 (Court).

Skyline Potato and the Folson Farm Group argued that Exhibits AB, AC, and AD -- Tan-O-On Marketing's Receivables Aging Detail, Vendor Balance Detail, and Customer Balance Detail -- cannot be authenticated, because they are QuickBooks reports, and it is not possible to discern who entered the evidence into the QuickBooks software, and are thus also hearsay, as it is not possible to identify the declarant.  See Tr. at 63:25-64:11 (Jaramillo).  Hi-Land Potato and Worley pointed out that, in regards to Exhibit AD, it is the same document as Skyline Potato and the Folson Farm Group's Exhibit 33 by, and already admitted into evidence as Exhibit 33. Similarly, Exhibits AB and AC are Tan-O-On Marketing's Exhibit 4, and Skyline Potato and the Folson Farm Group thus does not object to the evidence that Tan-O-On Marketing proffers.  See Tr. at 64:19-65:21 (Bohnhoff, Court).  Tan-O-On Marketing noted that these documents were existing reports that Brown printed, not, as was the case with the audit report, created after

- 17 -

litigation had started.  See Tr. at 66:4-24 (Robinson).  The Court stated that it agreed there is a difference between the audit trail, which was created after litigation had commenced, and the reports identified as Exhibits AB, AC, and AD, which only printed data that had been inputted into the computer.  See Tr. at 70:11-20 (Court).  Skyline Potato and the Folson Farm Group withdrew their objection to AB, but persisted in their objection to AC and AD.  See Tr. at 72:7-8 (Jaramillo).  The Court admitted AC and AD only as against Tan-O-On Marketing, but not against Skyline Potato and the Folson Farm Group.  See Tr. at 72:9-73:8 (Court, Bohnhoff).

The Court admitted Exhibits AE-AP without objection.  See Tr. at 73:10-13 (Court).  In regards to Exhibits AR-AX, Skyline Potato and the Folson Farm Group argued that the documents relating to the Andersons' bank account in the Bank of Albuquerque authorizing the transfer of funds are not relevant pursuant to rules 401 and 402, and if they are relevant, the danger that they will cause undue delay and will waste the Court's time substantially outweighs their probative value.  See Tr. at 73:16-22 (Jaramillo).  Hi-Land Potato and Worley asserted that the documents are relevant of a material issue, because they are records of money that was proceeds from PACA trust assets, and thus evidence of the Andersons' conversion of trust assets, and also show that the money that was transferred was then paid to Mr. Robinson, the Andersons' attorney.  See Tr. at 73:24-75:1 (Bohnhoff).  Skyline Potato and the Folson Farm Group pointed out that Hi-Land Potato's and Worley's assertions additionally relate to Exhibits BB, BC, and BD, and that they go to Hi-Land Potato and Worley's argument that Skyline Potato and the Folson Farm Group failed to exhaust their PACA remedies, a requirement which Skyline Potato and the Folson Farm Group argue does not exist.  See Tr. at 75:3-22 (Jaramillo).  The Court noted that, as Skyline Potato and the Folson Farm Group point out, the exhaustion argument is material to the case, and these documents are therefore relevant and admissible.  See

- 18 -

Tr. at 75:23-76:1 (Court).  The Court therefore admitted AQ, AR, AS, AT, AU, AV, AW, AX,

BB, BC, and BD, and also admitted AY, AZ and AB.  See Tr. at 76:1-17 (Court, Jaramillo).

In regard to Exhibits BE, BF, and BI, Skyline Potato and the Folson Farm Group asserted

that, according to their records, these documents were not produced during discovery, and they

were thus prevented from using the documents during the Worleys' cross examination.  See Tr.

at 76:19-77:2 (Jaramillo).  Skyline Potato and the Folson Farm Group additionally contended

that the documents are irrelevant to the claims and affirmative defenses that Hi-Land Potato and

Worley allege.  See Tr. at 77:3-5 (Jaramillo).  Hi-Land Potato and Worley stated that the

documents were not produced in discovery, as "they aren't within the categories of documents

that were requested."  Tr. at 77:7-9 (Bohnhoff).  They agreed to withdraw Exhibit BI, noting that

Carla Worley can testify to the facts in the Exhibit.  See Tr. At 77:9-17 (Bohnhoff).  Hi-Land

Potato and Worley asserted that Exhibits BE and BF -- statements from Hi-Land Potato's bank

account -- were not produced, and were only recently identified as relevant, because only

recently had Skyline Potato, the Folson Farm Group, and Tan-O-On Marketing begun alleging

that Hi-Land Potato had paid "a Hartford insurance premium [to renew] Tan-O-On's insurance

policy, and these two statements are offered . . . to show that Hi-Land, in fact, never did make

any kind of payment for that renewal."  Tr. at 77:18-78:3 (Bohnhoff).  The Court inquired

whether Skyline Potato and the Folson Farm Group had discovery requests that included these

documents.  See Tr. at 78:5-9 (Court).  Skyline Potato and the Folson Farm Group asserted that,

in light of Hi-Land Potato and Worley's clarification as to the purpose of the Exhibits, they may

not have been responsive to discovery requests, as they are irrelevant.  See Tr. at 78:15-24

(Esquivel).  The Court noted that Tan-O-On Marketing has raised the issue whether Hi-Land

Potato purchased insurance for Tan-O-On Marketing, and the Exhibits appear probative of that

- 19 -

issue.  See Tr. at 78:25-4 (Court).  Skyline Potato and the Folson Farm Group responded by raising two issues: (i) regardless whether they are probative of the material issue as to Tan-O-On Marketing's claims, they are not relevant as to Skyline Potato and the Folson Farm Group, and the Court should not admit the documents against them; and (ii) the Exhibits cannot be authenticated under rule 902, because the proper records custodian is not testifying and has not submitted an affidavit as to their authenticity.  See Tr. at 79:6-18 (Esquivel, Court, Jaramillo). Hi-Land Potato and Worley responded that Carla Worley can authenticate the statements, because they reflect checks that she personally wrote on Hi-Land Potato's behalf.  See Tr. at 79:20-23 (Bohnhoff).  The Court conditionally admitted Exhibits BE and BF subject to Carla Worley's authentication at trial.  See Tr. at 80:4-14 (Court).  The Court also admitted BG.  See Tr. at 80:15 (Court).

Skyline Potato and the Folson Farm Group stated that they object to Exhibit BH -- a Reconciliation of checks from Tan-O-On Marketing to Hi-Land Potato -- on grounds of hearsay and authenticity, because it is handwritten, and it is not clear who wrote the document or when. See Tr. at 81:1-4 (Jaramillo).  Hi-Land Potato and Worley asserted that Carla Worley prepared the Reconciliation, that she testified about the document in her deposition testimony, and that she will authenticate and explain it during the trial.  See Tr. at 81:6-11 (Bohnhoff).  In response to the Court's inquiry how the Exhibit is not hearsay, Hi-Land Potato and Worley stated that the Exhibit is a summary of about five hundred pages worth of billing documentation, the underlying documents are business records, and the summary is thus admissible under rule 1006.  See Tr. at 81:23-83:13 (Bohnhoff, Court).  Skyline Potato and the Folson Farm Group asserted that they are unsure of what the underlying documents are and contended that rule 1006 requires notice, which they did not receive.  See Tr. at 83:14-23 (Jaramillo, Bohnhoff, Court).  Upon the Court's

- 20 -

inquiry whether the underlying documents were made available to the opposite party, as rule 1006 requires, Hi-Land Potato and Worley stated that the underlying documents are Exhibit CR, to which Skyline Potato, the Folson Farm Group, and Tan-O-On Marketing do not object, and the checks underlying the summary are BJ, to which Skyline Potato and the Folson Farm Group have objected only on relevance grounds.  See Tr. at 84:3-6 (Bohnhoff).  Skyline Potato and the Folson Farm Group argued that, upon reviewing Carla Worley's deposition testimony regarding Exhibit BH, "the proposition that these documents constitute a summary . . . I think is misleading."  Tr. at 84:10-19 (Esquivel).  They pointed out that many of the checks listed in the summary were paid to Hi-Land Potato from other suppliers, that these checks are not being offered into evidence, and that Carla Worley's deposition testimony states that she recognized much of the handwriting as that of Hi-Land Potato's employees, but the testimony does not state that she prepared the summary.  See Tr. at 84:10-23 (Esquivel).  The Court stated that it could not determine at the current time whether Carla Worley prepared the report and whether the underlying documents are admissible, so it would, at the current time, decline to rule on Exhibit BH.  See Tr. at 85:5-11 (Court).

Skyline Potato and the Folson Farm Group asserted that they object to Exhibit BJ -- documents reflecting Hi-Land Potato's sales fees paid to Tan-O-On Marketing -- because they are not relevant, and the danger that the documents will cause undue delay substantially outweighs any probative value of their admission.  See Tr. at 85:14-18 (Jaramillo).  Hi-Land Potato and the Folson Farm Group responded that the documents are probative whether Hi-Land Potato merged with Tan-O-On Marketing, as evidence of payments of Tan-O-On Marketing's sales fees is evidence rebutting such an allegation.  See Tr. at 85:21-86:13 (Bohnhoff).  Tan-O-On Marketing stated that, "as to them proving or disproving any kind of merger, that's just an

attorney's theory . . . . [O]ur problem with them will be in a factual basis. They are documents that were sent to Tan-O-On, but what they mean is entirely speculative."  Tr. at 87:2-12 (Jaramillo).  The Court stated that, based on the parties' representations regarding the merger issue, the documents appear probative, and the Court therefore admitted Exhibit BJ over objection.  See Tr. at 87:16-20 (Court).  In response to the Court's inquiry why it appeared there were no exhibits between BJ and BQ, Hi-Land Potato and Worley responded that they had decided to withdraw them before trial, but had already numbered the exhibits.  See Tr. at 87:19-23 (Court, Bohnhoff).

In regard to Exhibit BQ, Skyline Potato and the Folson Farm Group argued that BQ through CD -- documents relating to Shannon Casey's and Shawna Casey's bankruptcy proceedings -- are irrelevant to any claims or defenses in the matter, because, to the extent Hi-Land Potato and Worley are offering them in regards to their exhaustion of administrative remedies allegation, they are irrelevant.  See Tr. at 88:1-12 (Jaramillo).  They also stated that the documents are inadmissible hearsay.  See Tr. at 88:13-15 (Jaramillo).  Tan-O-On Marketing joined Skyline and the Folson Farm Group in these objections.  See Tr. at 91:12-92:3 (Court, Robinson).  Hi-Land Potato and Worley argued that the documents are relevant to their defense that Skyline Potato and the Folson Farm Group failed to mitigate their damages by exhaustion of other avenues for collecting the money owed.  See Tr. at 88:18-89:7 (Bohnhoff).  Hi-Land Potato and Worley asserted that the documents are not hearsay, because they are offering them to show that Skyline Potato and the Folson Farm Group received notice of the Caseys' bankruptcy proceedings, and that "[t]he fact of an agreement being reached . . . is [not] hearsay, rather, that it's the fact of the agreement to release [Shannon Casey] of any claim if he pays only $80,000 of what is now claimed to be a $500,000 debt."  Tr. at 89:8-20 (Bohnhoff).  The Court then

admitted Exhibits BQ through CD for the limited purpose of showing notice, but not for the truth of the matters asserted therein.  See Tr. at 90:5-16 (Court).

Skyline Potato and the Folson Farm Group objected to Exhibit CE -- Westly Wellborn's May 21, 2012 Revised Expert Report -- on hearsay grounds.  See Tr. at 90:18-22 (Jaramillo). The Court stated that its common practice with experts' reports is to keep them out, because they constitute inadmissible hearsay, unless all parties stipulate to the reports' admissibility.  Because the parties do not agree here, the Court excluded Exhibit CE.  See Tr. at 90:25-91:6 (Court).  The Court moved on to Exhibit CF -- Spud Facts -- "a kind of information sheet within the potato industry" that has price points and typical yields, to which Skyline Potato and the Folson Farm Group objected, because it is irrelevant, hearsay, and it cannot be properly authenticated.  Tr. at 91:8-11, 92:5-10 (Jaramillo).  Hi-Land Potato and Worley asserted that the Exhibit is a market report containing the prices of potatoes during 2008 and 2009, and is admissible pursuant to rule 803(17).  See Tr. at 92:16-19 (Bohnhoff).  Hi-Land Potato and Worley asserted that both Gerald Anderson and the Worleys will recognize the Exhibit as a market report during the trial, and it is relevant as it shows the great decline in the price of potatoes in 2009, and explains why Tan-O-On Marketing's revenue also decreased at that time.  See Tr. at 93:1-11 (Bohnhoff).  The Court overruled the relevance objection.  See Tr. at 93:16-17 (Court).  The Court stated that it could not admit Exhibit CF at the present time without its being authenticated as a market report by a witness at trial.  See Tr. at 94:2-13 (Court).

The Court admitted Exhibits CG, CH, and CI, and noted Hi-Land Potato and Worley removed Exhibit CJ.  See Tr. at 94:14-18 (Court).  The Court also admitted Exhibits CL, CM, CN, CO, CP, CQ, and CR.  See Tr. at 95:10-11 (Court).  In response to the inquiry how Hi-Land Potato and Worley planned to overcome the hearsay and best-evidence objections to Exhibit CK

-- the Second Supplemental Declaration of Carla Worley -- they argued that it is effectively a summary of the billing documents that they are proffering in Exhibit CR, to which no party has objected.  <u>See</u> Tr. at 94:19-25 (Bohnhoff).  Hi-Land Potato and Worley offered to extract the numbers only from the declaration rather than moving to admit the declaration in its entirety. <u>See</u> Tr. at 95:4-7 (Bohnhoff).  Skyline Potato and the Folson Farm Group asserted that "[t]he issue here is best evidence.  [If] Mrs. Worley [is] going to be present to testify then she should simply do so."  Tr. at 95:22-24 (Jaramillo).  The Court asked Skyline Potato and the Folson Farm Group whether they had any doubt that within Exhibit CK is a summary of the documents in Exhibit CR.  <u>See</u> Tr. at 96:6-10 (Court).  They responded that they have no reason to doubt that it is a summary of the documents, but they doubt whether it is a full and accurate summary of the documents.  <u>See</u> Tr. at 96:11-19 (Jaramillo).  Skyline Potato and the Folson Farm Group asserted that, to the extent Exhibit CK constitutes a summary, it is an incomplete summary, as it does not reflect all of the documents of which Exhibit CR consists.  <u>See</u> Tr. at 97:5-9 (Esquivel).  The Court responded that how accurate or thorough the summary might be goes to the weight of the evidence, and not to its admissibility.   <u>See</u> Tr. at 97:10-16 (Court).  The Court stated that, because the parties agree that document is a summary of the documents in Exhibit CR, although it may be somewhat cumulative, the Court will admit Exhibit CK as a summary and overrule the objection.  <u>See</u> Tr. at 96:20-97:2 (Court).

The Court then moved to Tan-O-On Marketing's exhibit list, first inquiring whether it was correct in understanding that Skyline Potato and the Folson Farm Group did not object to any of Tan-O-On Marketing's proposed Exhibits.  <u>See</u> Tr. at 99:7-10 (Court).  They stated that the Court was correct; they do not object to Tan-O-On Marketing's proposed Exhibits.  <u>See</u> Tr. at 99:11 (Jaramillo).  The Court proceeded to admit Exhibits 1-3 without objection.  <u>See</u> Tr. at

99:12-20 (Court).  Hi-Land Potato and Worley stated that their objection is to Exhibits 4F and 4K specifically, as it is the same audit trail from QuickBooks, that Brown printed, which the Court excluded pursuant to Hi-Land Potato and Worley's objection to Skyline and the Folson Farm Group's offering the exhibit.  See Tr. at 100:2-15 (Bohnhoff).  The Court sustained Hi-Land Potato and Worley's objection, and admitted all of Exhibit 4 except for 4F and 4K.  See Tr. at 100:16-19 (Court).  In regards to Tan-O-On Marketing's Exhibit 5 -- a summary of the Andersons' account of records regarding the Tan-O-On Marketing bank account's monthly statements from 2008-2009 -- Hi-Land Potato and Worley objected to the foundation, asserting that they were never provided copies of the 2008 bank statements underlying the alleged summary, and, because it was prepared out of court, they also objected on hearsay grounds.  See Tr. at 101:25-102:8 (Bohnhoff).  In response to Tan-O-On Marketing's representation that the Andersons would authenticate the summary at trial, the Court stated that it could not admit the Exhibit without authentication and without foundation that it complies with rule 1006 in terms of it being a summary the records for 2008.  See Tr. at 102:10-17 (Court).  The Court admitted Exhibits 6 and 7 without objection.  See Tr. at  102:19-22 (Court).

Hi-Land Potato and Worley stated that their objection to Exhibit 8 -- an electronic mail transmission from a Kroger Co. paralegal to Mr. Robinson -- is on the grounds that it is hearsay and is not covered by any exception.  See Tr. at 102:25-103:6 (Bohnhoff).  Tan-O-On Marketing responded that the electronic mail transmission was used in both Mercuri's and Carla Worley's deposition.  See Tr. at 103:8-13 (Robinson).  The Court sustained the hearsay objection and excluded Exhibit 8, noting that it was a Kroger Co. employee's out-of-court statement, and that it was being offered for the truth of the matter asserted within the electronic mail transmission. See Tr. at 103:14-16.  Hi-Land Potato and Worley noted that Exhibit 9 -- an electronic mail

- 25 -

transmission from an iTrade employee to Candy Mercuri -- is also not admissible for the same reason: it is hearsay not within any exception.  <u>See</u> Tr. at 103:17-104:5 (Bohnhoff).  Tan-O-On Marketing responded that the document is relevant, as it shows how Kroger Co. changed the account of the vender number used for Tan-O-On Marketing to reflect that it was now to be used by Hi-Land Potato, indicating the existence of the merger alleged.  <u>See</u> Tr. at 104:7-105:15 (Robinson).  The Court stated that the electronic mail transmission appears to fail to meet any exception to hearsay that would allow for its admissibility, because none of Tan-O-On Marketing's listed witnesses appeared able to properly authenticate the document as a record of regularly conducted activity as rule 803(6) requires.  <u>See</u> Tr. at 105:23-106:3 (Court).  The Court sustained the hearsay and excluded Exhibit 9, but did so without prejudice to Tan-O-On Marketing's ability to properly authenticate the electronic mail transmission as rule 803(6) requires through the proper witness at trial.  <u>See</u> Tr. at 106:10-16 (Court).

The Court admitted Exhibits 10, 11, 12, and 13 without objection.  <u>See</u> Tr. at 107:1-7 (Court).  With respect to Exhibit 14 -- a resignation letter from David Thuma to Mr. Robinson -- Hi-Land Potato and the Folson Farm Group explained that it was a letter from Shannon Casey's attorney relating to resignation of his employment and interest in Tan-O-On Marketing, and is hearsay that does not come within any exception for its admissibility.  <u>See</u> Tr. at 107:15-19 (Bohnhoff).  In response to the Court's inquiry whether the letter is being offered for its truth, Tan-O-On Marketing conceded that it is being offered for the matter asserted within the letter: that Shannon Casey resigned effective December 20, 2009.  <u>See</u> Tr. at 107:24-109:18 (Court, Robinson, Bohnhoff).  The Court sustained the hearsay objection and excluded Exhibit 14, but because Tan-O-On Marketing represented that it believed it could lay the proper foundation for

an exception at trial, the Court stained the objection without prejudice to it offering the exhibit with the proper foundation at trial. See Tr. at 110:10-111:6 (Court, Robinson).

Tan-O-On Marketing interjected to bring to the Court's attention that it had failed to list Julie Anderson, a named Defendant in the case, on its Pretrial Order, and that it is Hi-Land Potato and Worley's positions that, because the Pretrial Order is controlling, they believe she will not testify at trial. See Tr. at 111:16-25 (Robinson). Hi-Land Potato clarified that they did not object to her testimony at trial, but that they had based some of their objections on the belief that she was not going to do so. See Tr. at 112:2-11 (Bohnhoff, Court).

The Court moved to Exhibit 15, to which Hi-Land Potato and Worley object on the grounds that they had never received a copy of the Exhibit, and Mr. Robinson had represented that he did not intend to introduce the Exhibit at trial. See Tr. at 112:20-22 (Bohnhoff). Tan-O-On Marketing stated that it did not need to offer the Exhibit at trial and withdrew the Exhibit, along with Exhibit 35, as it was related to the same issue. See Tr. at 112:25-113:11 (Robinson, Court). The Court proceeded to admit Exhibits 16 and 17 without objection. See Tr. at 113:12-14 (Court). Because Exhibit 18 is the same December 28, 2009, letter that the Court allowed in only for the limited purposes of impeaching Shannon Casey's deposition testimony when offered as Skyline Potato and the Folson Farm Group's Exhibit 2, the Court also admitted Tan-O-On Marketing's Exhibit 18 for the same limited purpose of impeachment. See Tr. at 113:15-114:15 (Court, Bohnhoff, Robinson). The Court proceeded to admit the remainder of Tan-O-On Marketing's Exhibits to which the parties did not object, and thus admitted Exhibits 19, 24, 28, 29, 33, 36, and 37. See Tr. at 114:16-115:6 (Court, Bohnhoff).

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." <u>United States v. Christy</u>, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Under Federal Rule of Evidence 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." <u>United States v. Cunningham</u>, 194 F.3d 1186, 1199 (11th Cir. 1999).  A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.  <u>See</u> <u>United States v. Caraway</u>, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay.").  Rule 805 recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805.  A party opponent's statement is excluded from the definition of hearsay where:

> The statement is offered against an opposing party and:
>
> > **(A)** was made by the party in an individual or representative capacity;
> >
> > **(B)** is one the party manifested that it adopted or believed to be true;
> >
> > **(C)** was made by a person whom the party authorized to make a statement on the subject;
> >
> > **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

> **(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). As the United States Court of Appeals for the Tenth Circuit has stated:

> Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule. No guarantee of trustworthiness is required in the case of an admission. The freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from restrictive influences of the opinion rule and the rule requiring first-hand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for a generous treatment of this avenue of admissibility.

Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 667 (10th Cir. 2006)(alterations omitted)(internal quotations and alterations omitted).[2]

## **ANALYSIS**

For reasons stated on the record at the hearings, and further reasons stated herein, the Court will sustain in part and overrule in part: (i) the Plaintiffs' Objections; (ii) Hi-Land's TMI Objections; and (iii) Hi-Land's Plaintiff Objections. The Court will exclude Hi-Land Potato and Worley's Exhibit CE. The Court will conditionally admit their Exhibits BE and BF. The Court

---

[2] The 2011 restyling of the Federal Rules removed "admissions" from the language of rule 801(d), and uses instead the term "statements." Fed. R. Evid. 801(d). This replacement was purposeful: "The term 'admissions' is confusing because not all statements covered by the exclusion are admissions in the colloquial sense -- a statement can be within the exclusion even if it 'admitted' nothing and was not against the party's interest when made." Fed. R. Evid. 801, advisory committee's note on 2011 Amendments.

Although the advisory committee made the commentary quoted in the text regarding the trustworthiness of "admissions by a party-opponent" before the 2011 amendments to the Federal Rules of Evidence, the analysis should not be different under the new 2011 restyling of the rules. Because the advisory committee's purpose for the 2011 restyling was to make the rules "more easily understood and to make style and terminology consistent through the rules," and there was no "intent to change any result in any ruling on evidence admissibility," the analysis applied before 2011 should still be useful for cases after the restyling. Fed. R. Evid. 801, advisory committee's note on 2011 amends.

will admit their Exhibits BQ-CD for the limited purpose of showing that Skyline Potato and the Folson Farm Group had notice of their ability to submit claims against the Caseys in their bankruptcy proceedings, but not for the truth of the matter asserted within the Exhibits.    The Court will exclude Tan-O-On Marketing's Exhibits 4F, 4K, 8, 9, 14, and 18.   The Court will exclude Skyline Potato and the Folson Farm Group's Exhibits 2, 3, 5, 16, and 32.   The Court will admit the Kroger Co. documents within Skyline Potato and the Folson Farm Group's Exhibit 30 for the limited purpose of evidencing Kroger Co.'s business practices.

I.     **THE COURT WILL OVERRULE IN PART AND SUSTAIN IN PART SKYLINE POTATO AND THE FOLSON FARM GROUP'S OBJECTIONS TO HI-LAND POTATO AND WORLEY'S EXHIBITS OFFERED FOR TRIAL ON GROUNDS OF HEARSAY AND AUTHENTICATION.**

Skyline Potato and the Folson Farm Group filed the Plaintiffs' Objections, objecting to twenty exhibits that Hi-Land Potato intends to offer at trial on grounds of: (i) relevance; (ii) hearsay; (iii) authenticity; (iv) best evidence; and (v) Hi-Land Potato's and Worley's failure to disclose the proffered exhibits in discovery.   See Plaintiffs' Objections at 2-3.   The Court concludes that Hi-Land Potato and the Folson Farm Group have proved that the Court should, at this time, overrule their objections, or conditionally overrule their objections, to all except for their objection to Exhibit CE which the Court concludes is hearsay that does not fall under any exception to the general exclusion of hearsay statements.

A.     **THE COURT WILL EXCLUDE EXHIBIT CE -- THE EXPERT REPORT -- BECAUSE IT IS HEARSAY EXCLUDED UNDER RULE 802.**

"Hearsay testimony is generally inadmissible."   United States v. Christy, 2011 WL 5223024, at *5 (citing Fed. R. Evid. 802).   Under Federal Rule of Evidence 801(c), "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."   Fed. R. Evid. 801(c).   An out-of-court

- 30 -

statement may, however, be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.  See United States v. Caraway, 534 F.3d at 1299 ("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.  If admitted for impeachment purposes, however, it is not hearsay."). Moreover, even statements that are otherwise hearsay may be admitted under the exceptions contained in rules 803 and 804.

Exhibit CE is the report of Hi-Land Potato and Worley's expert, Westly Wellborn, revised May 21, 2012.  The report is a written document that Wellborn prepared outside of the court and contains Wellborn's statements, which Hi-Land Potato and Worley do not dispute they are offering for the truth of what the statements assert.  The statements in Exhibit CE therefore meet rule 801(c)'s definition of hearsay and are thus excluded by rule 802 unless "a federal statute; [the Federal R]ules [of Civil Procedure]; or other rules prescribed the Supreme Court" provide otherwise. Fed. R. Civ. P. 802.  Hi-Land Potato and Worley do not contest that any such source allows for the admissibility of the statements contained within Ms. Wellborn's report. The Court, therefore, sustains Skyline Potato and the Folson Farm Group's objection to Exhibit CE being admitted into evidence and will therefore exclude it.  See Vondrak v. City of Las Cruces, No. CIV 05-0172 JB/LFG, 2007 WL 2219449, at *3 n.4 (D.N.M. May 14, 2007)(Browning, J.), aff'd in part, rev'd in part, dismissed in part, 535 F.3d 1198 (10th Cir. 2008)(excluding the expert report "because rule 703 of the Federal Rules of Evidence allows an expert to rely on inadmissible facts in reaching an opinion or inference, but does not allow the proponent of the expert testimony to use the expert as a conduit for a party to get in otherwise inadmissible evidence . . . ."); United States v. Mirabal, No. CR 09-3207 JB, 2010 WL 3834072, at *4 (D.N.M. Aug. 7, 2010)(Browning, J.)(concluding that expert report was inadmissible, and

- 31 -

noting that, although inadmissible, "[the expert] could rely upon that report, because the materials that form the basis of an expert opinion need not, themselves, be admissible . . . ."). Wellborn can rely on her report, but will need to give her expert testimony viva voce.

**B.      THE COURT WILL ADMIT EXHIBITS BE AND BF -- BANK STATEMENTS AND A CALCULATION REFLECTING PAYMENTS HI-LAND POTATO MADE TO TAN-O-ON MARKETING -- SUBJECT TO CARLA WORLEY'S AUTHENTICATION OF THE DOCUMENTS AT TRIAL.**

Skyline Potato and the Folson Farm Group argue that the Court should not admit Exhibits BE, BF, and BI, because they were not disclosed during discovery, because they are irrelevant, and because they cannot be properly authenticated.  Hi-Land Potato and Worley assert that the documents were not produced because they were never requested during discovery, that the documents are probative of Tan-O-On Marketing's contention that Hi-Land Potato paid an insurance premium for Tan-O-On Marketing, and that Carla Worley can authenticate them at trial.  As Skyline Potato and Folson Farm Group admitted that they did not request production of these documents in discovery, see Tr. at 78:15-24 (Esquivel), the Court will overrule the objection on these grounds.

"Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 801.  "Rule 402 of the Federal Rules of Evidence provides that relevant evidence is admissible, unless otherwise provided by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other Supreme Court rules, while 'irrelevant evidence is not admissible." Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5378288, at *7 (D.N.M. Oct. 29, 2012)(Browning, J.)(quoting Fed. R. Evid. 402).  Relevant evidence may nonetheless be excluded pursuant to rule 403 if, among other reasons, the danger of unfair

prejudice, presenting cumulative evidence, or wasting time substantially outweighs the evidence's probative value.  See Fed. R. Evid. 403; Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., No. CIV02-1146JB/LFG, 2007 WL 2296903, at *9 (D.N.M. June 26, 2007) (Browning, J)("Rule 403 authorizes a trial court to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'")(quoting Fed. R. Evid. 403 (2007)).

Rule 902(11) provides for self-authentication of a document that meets the hearsay exception for a record of a regularly conducted activity as long as the proponent gives and adverse party notice of its intent to offer the document at trial:

> **(11) Certified Domestic Records of a Regularly Conducted Activity.** The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record -- and must make the record and certification available for inspection -- so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902.  Rule 803(6) provides the exception to the rule against admission of hearsay for records of regularly conducted activity, often referred to as the business records exception.

A record of an act, event, condition, opinion, or diagnosis if:

> **(A)** the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;

> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> **(C)** making the record was a regular practice of that activity;

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

**(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Tan-O-On Marketing is alleging that Hi-Land Potato paid a Hartford insurance premium to renew Tan-O-On's insurance policy that Kroger Co. requires of its produce suppliers and brokers, and that Hi-Land Potato's payment of the premium is evidence that Tan-O-On Marketing merged with Hi-Land Potato.  Hi-Land Potato and Worley submit that Hi-Land's Exhibits BE and BF are Hi-Land Potato's bank statements from the time that Tan-O-On Marketing is alleged that they were to have made the payments, and the absence of any payments to the Hartford Financial Services Group, Inc. is evidence to the contrary.  Because both Tan-O-On Marketing and Hi-Land Potato contest the issue whether Tan-O-On Marketing merged with Hi-Land Potato, and because any merger between the two would affect Hi-Land Potato and Worley's claims and defenses and this case -- e.g., their defense that the parties are precluded from collecting any payments made to Hi-Land Potato or Worley before they exhaust their ability to receive payments from Tan-O-On Marketing and its directors and officers -- whether a payment was made from Hi-Land Potato's bank account during the time in question "has a[] tendency to make a fact more or less probable than it would be without the evidence; and th[at] fact is of consequence in determining the action."  Fed. R. Evid. 401.  The bank records are therefore relevant and presumptively permissible.  See Fed. R. Evid. 402.  Because no party contends that any of the other grounds for precluding the introduction of the evidence in rule 402

apply to exclude the Exhibits, or that the Court should exclude it pursuant to rule 403, the Court will overrule Skyline and the Folson Farm Group's relevance objection to Exhibits BE and BF.

Skyline Potato and the Folson Farm Group also contend that the Exhibits cannot be authenticated under rule 902, because the proper records custodian is not testifying and has not submitted an affidavit as to their authenticity.  Hi-Land Potato and Worley assert that Carla Worley can authenticate the statements, because the statements reflect checks that she personally wrote on Hi-Land Potato's behalf.  The bank produced the statements to reflect transactions made with regard to Hi-Land Potato's account during January and February of 2010.  Hi-Land Potato is offering them for the truth of the matter asserted within them: that there was never a payment made or not made from Hi-Land Potato's bank account to Harford Financial to pay for insurance.  Thus, these records are hearsay statements under rule 801(c), and inadmissible under rule 802 unless they meet an exception.

Although Skyline Potato and the Folson Farm Group contend that Hi-Land Potato and Worley cannot meet rule 902(11)'s first requirement to be self-authenticating, the Tenth Circuit has held that, in regard to bank statements particularly, such a record custodian is not required to submit an affidavit or certification, because courts are permitted to take judicial notice of the nature of the business records.  In United States v. Johnson, 971 F.2d 562 (10th Cir. 1992), the Tenth Circuit upheld the district court's admission of bank statements where they were authenticated "through the testimony of the individual investors rather than through a custodian of records by the bank."  971 F.2d at 571.  The Tenth Circuit reasoned that district courts can take judicial notice that bank statements are admissible pursuant to rule 803(6):

> We do not agree with appellant that the failure to call the records custodians from the banks that generated the documents is determinative of the documents' admissibility under Rule 803(6). "A foundation for admissibility may at times be

predicated on judicial notice of the nature of the business and the nature of the records as observed by the court, particularly in the case of bank and similar statements." Federal Deposit Ins. Corp. v. Staudinger, 797 F.2d 908, 910 (10th Cir.1986) (citing Weinstein's Evidence at 803-178.)  The record as a whole in this case establishes a sufficient foundation for the admission of the records under Rule 803(6).   The record is replete with circumstances demonstrating the trustworthiness of the documents.  There is simply no dispute that the transactions shown by the receipts took place as recorded.  As noted above, bank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulation.   The nature of the documents themselves as bank statements together with the testimony of the investors established that the records were made at the time of the transactions in question and were made in the course of a regularly conducted business activity.  The accuracy of the documents and the fact that they were prepared by a person with knowledge of the transactions were established both by the testimony of the investors and by comparison with the defendant's own bank records.   In short, the record as a whole shows a sufficient foundation for the admission of the documents under Rule 803(6).  Under the circumstances, the investors were "qualified witness[es]" whose testimony, together with the other evidence, was sufficient to show a foundation for the admission of the documents.  The district court did not abuse its discretion in admitting the evidence.

971 F.2d at 571-72 (internal footnote omitted).  As the Tenth Circuit reasoned in United States v. Johnson, so here, the bank statements are admissible under rule 803(6) as records of regularly conducted activity so long as Carla Worley's trial testimony provides sufficient foundation of their knowledge as required by rule 803(6)(A)-(C).

As to the second requirement for self-authentication of the documents, that Hi-Land Potato and Worley make available the records before the trial or hearing and provide reasonable written notice of intent to offer them at trial, the Court finds that this requirement has been met. Although Hi-Land Potato and Worley provided notice of their intent to use these documents only at the time they disclosed their evidence list, on October 9, 2012, ten days before the hearing on this matter and three days before objections to the exhibits, in light of Tan-O-On Marketing only having raised this argument less than a month before that date, the Court cannot say this notice

was unreasonable.  Skyline Potato and the Folson Farm Group's admission that the documents were not responsive to any discovery requests as they did not believe the insurance matter was at issue supports Hi-Land Potato and Worley's assertion that this matter arose very late in this case. Finally, because the Court gave all of the parties' ample opportunity at the hearing on the exhibits to present their arguments why the Court should exclude Exhibits BE and BF, and heard all of the parties' arguments, the Court concludes that the parties "ha[d] a fair opportunity to challenge the[] [documents." Fed. R. Evid. 902(11).  Thus, because Exhibits BE and BF -- Hi-Land Potato's bank statements -- are records of regularly conducted activity, and because Hi-Land Potato and Worley have met the requirements for their self-authentication under rule 902(11), the Court will admit Exhibits BE and BF subject to Carla Worley's trial testimony showing that they meet the requirements of rule 803(6)(A)-(C).

### C. THE COURT WILL ADMIT HI-LAND POTATO AND WORLEY'S EXHIBITS BQ-CD FOR THE LIMITED NON-HEARSAY PURPOSES OF SHOWING THAT SKYLINE POTATO AND THE FOLSON FARM GROUP HAD NOTICE OF THE CASEYS' BANKRUPTCY FILINGS, AND THAT SOME OF THE PLAINTIFFS AGREED TO DISMISS THEIR CLAIMS AGAINST THE CASEYS FOR LESS THAN THE FULL AMOUNT THAT THE CASEYS OWED.

Skyline Potato and the Folson Farm Group argue that BQ through CD -- documents relating to Shannon Casey's and Shawna Casey's bankruptcy proceedings -- are irrelevant to any claims or defenses in the matter, and are hearsay.  See Tr. at 88:13-15 (Jaramillo).  Tan-O-On Marketing joined Skyline and the Folson Farm Group in these objections.  See Tr. at 91:12-92:3 (Court, Robinson).  Hi-Land Potato and Worley respond that the documents are relevant to their defense that Skyline Potato and the Folson Farm Group failed to mitigate their damages by attempting to collect the money owed from the Caseys, who unlike Hi-Land Potato, are not PACA beneficiaries, before suing Hi-Land Potato and Worley.  Hi-Land Potato and Worley

assert that the documents are not hearsay at all, because they are offering the bankruptcy documents to show that Skyline Potato and the Folson Farm Group received notice of the Caseys' bankruptcy proceedings, and they are offering the settlement stipulation to show the legal effect of the stipulation.

It is true that "[h]earsay testimony is generally inadmissible."  United States v. Christy, 2011 WL 5223024, at *5.  It is equally true that "testimony is not hearsay when i[t] is [offered] to prove only that a statement was made and not the truth of the statement."  Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 984 (10th Cir. 1963)(citing Aikins v. United States, 282 F.2d 53 (10th Cir. 1960)).  Statements offered not to prove the truth of the statements, but rather "offered for the effect on the listener [] are generally not hearsay."  Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993).  See United States v. Smalls, 605 F.3d 765, 785 n.18 (10th Cir. 2010)("[S]tatements offered for their effect on the listener are not hearsay.").  Thus, statements offered to show that the listener was on notice of a fact are not hearsay.  See Thornburg v. Mullin, 422 F.3d 1113, 1128 (10th Cir. 2004)("The statements were probably offered just to complete the narrative, and at most were offered to show that Thornburg was on notice that Anderson was intent on committing violence -- a use that is independent of the truth of the statement of intent and thus is not hearsay.").  "[L]egally operative statements [-- statements have legal effect by the mere fact of their statement [--] . . . are generally not for the 'truth of the matter asserted,' but rather to show the fact of the statement being made and for the effect of the statement on the hearer."  Barner v. City of Harvey, 95 C 3316, 1998 WL 664951, at *2 (N.D. Ill. Sept. 18, 1998).  The court documents regarding the Caseys' bankruptcy filings contain statements that were written out of court.  To the extent that Hi-Land Potato and Worley are offering these documents for the truth of the statements within the documents, they are

hearsay, and Hi-Land Potato and Worley have not pointed the Court to any exception that would allow their admission into evidence.  As the Tenth Circuit noted in United States v. Smalls, to the extent that Hi-Land Potato and Worley are offering the documents to show the effect that the documents had upon the listener -- or in this case, the reader -- they are not hearsay.  Using the Caseys' bankruptcy filings to show that Skyline Potato, the Folson Farm Group, and Tan-O-On Marketing had notice of their bankruptcies, as in Thornburg v. Mullin, is not offering the documents for the truth of the matter asserted and the statements contained therein are thus not hearsay.  Similarly, to the extent that Hi-Land Potato and Worley are offering the documents to show that the parties to this action reached a legally binding agreement to discharge any claims against the Caseys that they might have for less than the full amount of money owed to them by the Caseys, the statements are not being offered for the truth of the matter asserted, but rather as evidence of the legal effect of the agreement, the statements are "legally operative statements" and are thus not hearsay.  Barner v. City of Harvey, 1998 WL 664951, at *2 The Court will therefore admit Exhibits BQ through CD for the limited purpose of showing notice, but not for the truth of the matters asserted therein.[3]

---

[3] When the Court admits testimony for a limited purpose that would otherwise be inadmissible hearsay under rule 802, the Court provides a limiting instruction to the factfinder to limit the possibility that the evidence will be used improperly.  See, e.g., United States v. Christy, 2011 WL 5223024, at *9 (noting that, where the defendant wanted to offer evidence of the defendant's statement to show the effect it had on him, "the Court can mitigate any concerns which the United States has that Christy will use the evidence [to] raise a necessity defense with a limiting instruction and [by also] omitting any instruction on a necessity defense from the jury charge."); E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, No. CIV 02-1644 JB/RHS, 2008 WL 2323492 (D.N.M. Mar. 20, 2008)(Browning, J.)("[T]he Court believes it should allow the introduction of what Edgar knew in 2001, with, if reported, a limiting instruction."); Pedroza v. Lomas Auto Mall, Inc., No. CIV 07-0591JB/RHS, 2009 WL 1325440 (D.N.M. Apr. 6, 2009)(Browning, J.)("The Defendants' proposed purpose, so long as they limit their use of the statements to the effect of the statements on the listeners or other non-hearsay uses, is acceptable. The Court will not exclude the MVD officials' statements, but will give the jury a limiting

II.  **THE COURT WILL OVERRULE IN PART AND SUSTAIN IN PART HI-LAND POTATO AND WORLEY'S OBJECTIONS TO TAN-O-ON MARKETING'S AND SKYLINE POTATO AND THE FOLSON FARM GROUP'S EXHIBITS LISTED FOR TRIAL.**

Hi-Land Potato and Worley filed their Hi-Land's TMI Objections, objecting to nineteen of Tan-O-On Marketing's exhibits on grounds of: (i) relevance (including rule 403); (ii) authentication; (iii) foundation; (iv) hearsay; and (v) Tan-O-On Marketing's failure to disclose the proffered exhibits in discovery.  See Hi-Land's TMI Objections at 1-3.  At the hearing, the Court concluded that it should exclude Tan-O-On Marketing's Exhibits 4F, 4K, 5, 8, 9, 14, and 18.  Hi-Land Potato and Worley filed their Hi-Land's Plaintiff Objections, objecting to fourteen of Skyline Potato's and the Folson Farm Group's exhibits on grounds of: (i) hearsay; (ii) relevance (including rule 403); (iii) authentication; (iv) foundation; and (v) Skyline Potato's and the Folson Farm Group's failure to disclose the exhibits in discovery.  See Hi-Land's Plaintiff Objections at 1-3.  The Court will exclude Skyline Potato and the Folson Farm Group's Exhibits 2, 3, 5, 16, and 32.  Because some of the Exhibits which the Court will exclude overlap between the parties, the Court will analyze those Exhibits together.

A.  **THE COURT WILL EXCLUDE TAN-O-ON MARKETING'S EXHIBITS 4F AND 4K, AND SKYLINE POTATO AND THE FOLSON FARM GROUP'S   EXHIBIT   32,   PURSUANT   TO   RULE   802,   AS   IT   IS INADMISSIBLE HEARSAY.**

Tan-O-On Marketing, Skyline Potato, and the Folson Farm Group assert that their Exhibit 32, and Tan-O-On Marketing's Exhibit 4F and 4K -- the audit trail report that was

---

instruction.").  In this case, however, because the trial is a bench trial and the Court will play the role of the factfinder, a limiting instruction need not be given, as the Court will properly limit the admissibility of the evidence when considering it at trial, and in its preparation of the Findings of Fact and Conclusions of Law.

compiled by Brown, who worked as a CPA for Tan-O-On Marketing, from Tan-O-On

marketing's QuickBooks software -- is relevant for purposes of demonstrating Tan-O-On

Marketing's recordkeeping habits and admissible hearsay, because they fall within rule 803(6)'s

exceptions for records of a regularly conducted activity.  Hi-Land Potato and Worley point out

that the documents cannot, as a matter of law, fit rule 803(6), because they were prepared and

printed from QuickBooks in late spring or early summer, and are not records of regularly

conducted activities, but were records prepared for this case.  Rule 803(6)(C)'s language requires

that, for a record to fit under this exception, "making the record was a regular practice of that

activity . . . ."  Fed. R. Evid. 803(6)(C).  Thus, the Tenth Circuit has noted:

> The rule cautions, however, that business records will not be admissible where
> "the source of information or the method of circumstances of preparation indicate
> lack of trustworthiness." The rationale behind the business records exception is
> that such documents have a high degree of reliability because businesses have
> incentives to keep accurate records. "The business records exception is based on a
> presumption of accuracy, accorded because the information is part of a regularly
> conducted activity, kept by those trained in the habits of precision, and
> customarily checked for correctness, and because of the accuracy demanded in the
> conduct of the nation's business." "If any person in the process is not acting in the
> regular course of business, then an essential link in the trustworthiness chain
> fails."

Timberlake Const. Co. v. U.S. Fidelity and Guar Co., 71 F.3d 335, at 341-42 (10th Cir. 1995)

(internal citations omitted). That Brown collected, created, and prepared these documents in

2012, more than two years after Tan-O-On Marketing recorded the data in QuickBooks and

admittedly in preparation for this case, shows that, regardless whether recording all of Tan-O-On

Marketing's was a regular practice of the business, making the audit report was not.   See

Timberlake Const. Co. v. U.S. Fidelity and Guar Co., 71 F.3d at 342 ("It is well-established that

one who prepares a document in anticipation of litigation is not acting in the regular course of

business.").  Although Tan-O-On Marketing argued at the hearing that the Andersons' testimony

could lay the proper foundation as to the amounts that were recorded in QuickBooks, which the audit report allegedly reflects, because it is nevertheless hearsay and does not fit under any exception, the audit report is inadmissible pursuant to rule 802.  The audit report is akin to an expert report, which the Court routinely excludes, as it also likely relies on facts and evidence regardless whether such facts or evidence would be admissible at trial.  The Court will therefore sustain Hi-Land Potato's objections, and exclude Skyline Potato and the Folson Farm Group's Exhibit 32, and Tan-O-On Marketing's Exhibits 4F and 4K.

> **B.   THE COURT WILL EXCLUDE TAN-O-ON MARKETING'S EXHIBITS 8, 9, AND 14, BECAUSE THE STATEMENTS WITHIN THE ELECTRONIC MAIL TRANSMISSIONS AND THE LETTER ARE INDADMISSIBLE HEARSAY NOT WITHIN ANY EXCEPTION.**

Hi-Land Potato and Worley object to Exhibits 8, 9, and 14 -- an electronic mail transmission from a Kroger Co. paralegal to Mr. Robinson, an electronic mail transmission to Mercuri, and a letter from Shannon Casey's attorney to Mr. Robinson -- asserting that they are hearsay and that no exception allows for their admissibility.  Tan-O-On Marketing's only response in opposition to the Court's sustaining the objection is that both Carla Worley and Mercuri referred to the electronic mail transmissions during their deposition, and that it believed it may be able to lay a proper foundation rule 803(6)'s exception at trial for Exhibit's 9 and 14. The parties represent that the emails contain statements regarding Kroger Co.'s vender number, and how that number is used and how Kroger Co. may transfer the number internally.  Because Tan-O-On Marketing is offering the electronic mail transmissions as evidence that Hi-Land Potato merged with Tan-O-On Marketing, or misappropriated its Kroger Co. vender number, Tan-O-On Marketing is offering these electronic mail transmissions, which are out-of-court statements, for the truth of the matter asserted within them.  Similarly, because Tan-O-On

- 42 -

Marketing proffers Exhibit 14, Shannon Casey's letter to Robinson about his resignation from Tan-O-On Marketing being effective as of December 20, 2009, to establish that he knew that Tan-O-On Marketing was insolvent on December 20, 2009, it is also being offered for the truth of the matter it asserts. These documents are thus hearsay under rule 801. Because Tan-O-On Marketing has not articulated any exceptions or exclusions from the exclusion of hearsay evidence under rule 802 that may apply to these documents, the Court will sustain Hi-Land Potato and Worley's objections to Exhibits 8, 9, and 14, and exclude them from trial. Pursuant to Tan-O-On Marketing's requests at the hearing, however, the Court will sustain Hi-Land Potato and Worley's objections to Exhibits 9 and 14 without prejudice, so that Tan-O-On Marketing may attempt to lay the foundation for the documents to meet rule 803(6)'s exception to the exclusion of hearsay evidence.

### C.   THE COURT WILL ADMIT TAN-O-ON MARKETING'S EXHIBIT 18, AND SKYLINE POTATO AND THE FOLSON FARM GROUP'S EXHIBIT 2, FOR THE LIMITED PURPOSE OF IMPEACHING SHANNON CASEY'S DEPOSITION TESTIMONY.

Hi-Land Potato and Worley contend that Tan-O-On Marketing's Exhibit 18, which is the same document as Skyline Potato and the Folson Farm Group's Exhibit 2 -- a December 28, 2009, Letter from Shannon Casey to Wright -- is inadmissible hearsay. Skyline Potato, the Folson Farm Group, and Tan-O-On Marketing assert that, because Shannon Casey admitted in his deposition that he lied in the Letter about any referenced merger between Hi-Land Potato and Tan-O-On Marketing, they were offering the letter not for the truth of the matter asserted, but for impeachment purposes. Rule 607 provides that any party, including the party calling the witness, may attack the credibility of a witness. Fed. R. Evid. 607. Any party may attack a witness' credibility regardless whether the witness gives live testimony or whether the witness'

deposition testimony is read into the record.  See Beechwood Restorative Care Ctr. v. Leeds, 856 F. Supp. 2d 580, 600 (W.D.N.Y. 2012)("A party is allowed to impeach a witness whose deposition testimony the party has read into the record in its case in chief."); Prater v. United Mine Workers of Am., Districts 20 & 23, 793 F.2d 1201, 1212 (11th Cir. 1986)(holding that a witness' testifying to a statement told to the witness by the decedent whose deposition testimony was read into the trial record was admissible as impeachment testimony)("Cupps' testimony was not hearsay; it was introduced to impeach [the decedent's] deposition.  Although [the decedent] was a witness for plaintiffs (his deposition was read into the record by plaintiffs), the Federal Rules of Evidence permit a party to impeach his own witness.")(citing Fed. R. Evid. 607).  In Scholz Homes Inc. v. Wallace, 590 F.2d 860 (10th Cir. 1979), the Tenth Circuit held that impeachment of deposition testimony that the defendant had read into the record at trial was permitted pursuant to rule 607 notwithstanding that the witness was "admittedly adverse to the [plaintiff]."  590 F.2d at 863.  The Tenth Circuit noted: "We do not attach significance to the fact that the [defendant's] attorney could properly have omitted the undesirable portions of the witness' deposition when it was read into the record."  590 F.2d at 863.  Here, as in Scholz Homes, Inc. v. Wallace, Shannon Casey, a witness adverse to Tan-O-On Marketing, is not testifying at trial, but the parties have stipulated to reading portions of his deposition testimony into the record.  The parties agreed at the hearing that the December 29, 2009, Letter contradicts portions of his deposition testimony that will be read into the record at trial.  Thus, a party can, pursuant to rule 607, attack Shannon Casey's credibility.  The Court, therefore, will allow the letter to come in for the limited purpose of impeaching Shannon Casey, and overrule Hi-Land Potato and Worley's objections to admitting Tan-O-On Marketing's Exhibit 18, and Skyline Potato and the Folson Farm Group's Exhibit 2.  Because the letter is hearsay evidence not

- 44 -

admissible pursuant to any exception or exclusion, however, the Court will admit the Exhibits for the limited purpose of showing Shannon Casey's inconsistent statements, thus contradicting his testimony that will be read into the trial record, and will not admit the Exhibits for the truth of the Shannon Casey's statements therein.

### D.   THE COURT WILL SUSTAIN HI-LAND POTATO AND WORLEY'S OBJECTION TO SKYLINE POTATO AND THE FOLSON FARM GROUP'S EXHIBITS 3, BECAUSE IT IS INADMISSIBLE HEARSAY.

Hi-Land Potato and Worley object to Skyline Potato and the Folson Farm Group's Exhibit 3 -- an electronic mail transmission from Wright to Wahlberg -- on grounds that it is hearsay and excluded pursuant to rule 802.  Skyline Potato and the Folson Farm Group contend that, because Wright wrote the electronic mail transmission after receiving Shannon Casey's notice that he was terminating the business of Tan-O-On Marketing and the electronic mail transmission relays that information to Wahlberg, it fits within rule 803(1)'s exception to the exclusion of hearsay evidence for a present-sense impression.  Rule 803(1) provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it" is not excluded by the rule against hearsay.  Fed. R. Evid. 803(1).  The Tenth Circuit has stated that "a delay of minutes or hours between an event and a statement bars resort to 803(1)."  United States v. Rosetta, 127 F.3d 1110, at *2 (10th Cir. 1997)(unpublished table opinion).[4]  Here, Wright's email is dated January 11, 2010, and he received Shannon

---

[4]  United States v. Rosetta is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Rosetta has

Casey's letter on December 30, 2009.  Rule 803(1)'s plain language requires that the statement be made "while or immediately after" the hearsay declarant perceived the event.  In light of United States v. Rosetta's holding that minutes or hours bars application of 803(1), the delay of eleven or twelve days between Shannon Casey's letter and Wright's electronic mail transmission here thus bars the Court from finding that the statements can be admitted as present sense impressions.  The Court therefore sustains Hi-Land Potato and Worley's objection to Exhibit 3, and will exclude the Exhibit.

Skyline Potato and the Folson Farm Group also contended at the hearing, however, that Wright did not receive information at the time he received the letter that the producers were not going to be paid, but rather that information was "information that Terry Wright learned at a later date, and certainly we can lay that foundation when he testifies."  Tr. at 22:10-17 (Jaramillo).  The Federal Advisory Committee Note to rules 803(1) and (2) states that "[t]he underlying theory of Exception (1) is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation."  Fed. R. Evid. 803(1) advisory committee's note to the 1972 Proposed Rules.  Professor Stephen A. Saltzburg has noted:

> The critical element, therefore, is contemporaneity; the statement must be made at the time that the event or condition is being perceived or immediately thereafter. If the statement is made right at the time of the event, it is assumed that the declarant had no time to lie about it. . . . If there is no evidence, circumstantial or otherwise, as to the time lapse, there is no foundation to admit the statement.

4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 803.02[2][a], at 803–14-15 (9th Ed. 2006).  Without any evidence about the time lapse, as Professor Saltzburg recognizes, the Court thus cannot admit the statement.  The Court will

persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

- 46 -

therefore sustain the objection and exclude Exhibit 3 without prejudice to Skyline Potato and the

Folson Farm Group laying the proper foundation at trial.[5]

### E.   THE COURT WILL SUSTAIN HI-LAND POTATO'S AND WORLEY'S OBJECTION TO EXHIBITS 5 AND 16, AND EXCLUDE THEM FROM TRIAL, BECAUSE THEY ARE INADMISSIBLE HEARSAY.

Hi-Land Potato and Worley object to Skyline and the Folson Farm Group's Exhibit 5 -- a

letter from Wright to Mr. Robinson -- and their Exhibit 16 -- electronic mail transmissions

between the Folson Farm Corporation and Wright -- on grounds that they are hearsay and

---

[5] In addition to laying the foundation for the time lapse between when Wright received the information that Shannon Casey would not pay the producers and the time that he wrote the electronic mail transmission, as the Court noted at the hearing, Skyline Potato and the Folson Farm Group must also provide the Court with case law supporting the position that Wright's electronic mail transmission is admissible under rule 803(1) at all.   It is unclear whether an electronic mail transmission can meet the foundation requirements.   While Courts have held in the past that notes and similar writings memorializing conversations were admissible under rule 803(1), the courts have done so only where the writings admitted were brief and the evidence established that the notes were taken substantially contemporaneously with the conversations.   See Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 557 (4th Cir. 1994)(upholding admission of note to prove intent to change beneficiary)("During or immediately after the telephone call, Holcombe wrote the following note to himself, '3-6-90 Bill Adams-Change beneficiary on life insurance to Roseta [sic] Adams (new wife).'"); Michaels v. Michaels, 767 F.2d 1185, 1201 (7th Cir. 1985)(upholding admission of telex where "the telex [stated] 'Ralph Michaels . . . just told me' and, although he later equivocated, Littlejohn testified in his deposition (which was read at trial) that he sent the telex 'immediately' after [the] conversation . . . ."), compare Vitek Sys., Inc. v. Abbott Labs., 675 F.2d 190, 194 (8th Cir. 1982)(holding that a 19-page handwritten memorandum did not meet 803(1)'s foundational requirements because the memorandum included the writer's "evaluation of the customer's thought process.").   Based on Hi-Land Potato and Worley's representations at the hearing that the electronic mail transmission contains multiple paragraphs and includes references to multiple conversations with multiple persons, the Court is not convinced that, even assuming that Wright composed the electronic mail transmission substantially contemporaneously with the conversation in which he learned that Shannon Casey was not going to pay the suppliers, the electronic mail transmission is admissible pursuant to rule 803(1).

inadmissible pursuant to rule 802.  Skyline Potato and the Folson Farm Group argue that Exhibit 5 is admissible as a recorded recollection pursuant to rule 803(5), and that the electronic mail transmissions within Exhibit 16 are admissible either under rule 803(1) as present-sense impressions or, because Wright is a salesperson who would allegedly send out electronic mail transmissions as a regular practice if his customers were not going to be paid, under rule 803(6). To the extent that Skyline Potato and the Folson Farm Group contend that the electronic mail transmissions in Exhibit 16 are present-sense impressions and admissible under 803(1), the Court will sustain the objection, without prejudice on the same reasoning as it rejected that argument regarding Exhibit 3 in Section II. D. of the objections above.

Rule 803(5) excepts recorded recollections from rule 802's general exclusion of hearsay and allows a document that meets the foundational requirements to be read into the record.  See Fed. R. Evid. 803(5).  Rule 803(5) defines a recorded recollection as: "A record that: **(A)** is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; **(B)** was made or adopted by the witness when the matter was fresh in the witness's memory; and **(C)** accurately reflects the witness's knowledge." Fed. R. Evid. 803(5).  The Tenth Circuit has held that it is a foundational requirement for a record's admission under rule 803(5) is that the "witness lack[] sufficient memory to testify fully" at trial, and it is reversible error if the lack of memory is not shown.  United States v. Dazey, 403 F.3d 1147, 1166-67 (10th Cir. 2005)(citing Collins v. Kibort, 143 F.3d 331, 338 (7th Cir. 1998; United States v. Felix-Jerez, 667 F.2d 1297, 1301-02 (9th Cir. 1982)).  Because whether Wright lacks sufficient memory to testify to the electronic mail transmissions' contents fully at trial cannot be shown until trial, the Court will sustain Hi-Land Potato and Worley's objection to Exhibit 5 at the present time, without prejudice to presentation of the issue at trial, and exclude Exhibit 5 from trial.

- 48 -

Because there are multiple electronic mail transmissions within Skyline Potato and the Folson Farm Group's Exhibit 16, the Court cannot soundly, at the present time and based upon the evidence that the parties proffered at the hearing on the objections, conclude that the statements in the electronic mail transmissions meet rule 803(6)'s foundational requirement for a record of a regularly conducted activity.  As the Court stated at the hearing, if Skyline Potato and the Folson Farm Group wish to lay the foundation for the individual electronic mail transmissions to be admitted under rule 803(6) at trial, they are directed to individually number each electronic mail transmission and renew their motion to admit the particular electronic mail transmission at the proper time at trial.  At the present time, however, the Court will sustain Hi-Land Potato's objection to Exhibit 16 without prejudice to renewal of the motion at trial and exclude the electronic mail transmissions from the trial.

## F.   THE COURT WILL ADMIT THE KROGER CO. DOCUMENTS IN SKYLINE POTATO'S AND THE FOLSON FARM GROUP'S EXHIBIT 30 FOR THE LIMITED PURPOSE OF EVIDENCING KROGER CO.'S BUSINESS PRACTICES, AS THEY ARE RECORDS OF A REGULARLY CONDUCTED ACTIVITY.

Hi-Land Potato and Worley object to Skyline Potato's and the Folson Farm Group's Exhibit 30 -- the Kroger Co. Affidavit, the Amended Kroger Co. Affidavit, and associated Kroger Co. documents -- because they assert that the documents have not been authenticated and are hearsay inadmissible under rule 802.  Skyline Potato and the Folson Farm Group asserted that the documents meet the exception to the exclusion of hearsay statements under rule 803(6), because they are records of Kroger Co.'s regularly conducted activity, the documents are self-authenticating under rule 902(8), and the Kroger employee affidavits show that they have made an acknowledgement pursuant to rule 902(11).  As the Court noted at the hearing on the objections, the Court concludes that the affidavits within Skyline Potato and the Folson Farm

Group's Exhibit 30 are self-authenticating pursuant to rule 902(8), and provide the foundation to establish that the Kroger Co. documents are self-authenticating pursuant to rule 902 (11). The Court also concludes that the Kroger Co. documents are records of regularly conducted activity pursuant to rule 803(6).

The Kroger Co. employee's affidavit establishes that the documents meet 803(6)'s requirements, as they show: (i) the record was made at or near the time that Kroger Co. received notification of Tan-O-On Marketing's request to change the vender name to Hi-Land Potato by someone with knowledge of the request; (ii) that Kroger Co. keeps these records as a matter of course in their business activities, and that these records were so kept; and (iii) that making these records is Kroger Co.'s regular practice when it receives such information from its suppliers. In addition, the Court has not been presented any evidence that "the source of information []or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). The documents are thus admissible under rule 803(6). The documents contain statements, however, and were made in reliance on statements, however, that came from a facsimile transmission that Kroger Co. received allegedly from Hi-Land Potato, sent by either one of the Caseys or one of the Worleys. These statements within the Kroger Co. documents are thus hearsay to the extent they are offered for the truth of the matter asserted. Because, as Skyline Potato, the Folson Farm Group, and Tan-O-On Marketing conceded at the hearing, these statements do not fit under any exception to rule 802's exclusion of hearsay, they are hearsay within hearsay inadmissible under rule 802. See Fed. R. Evid. 805. Additionally, the Kroger Co. affidavit and amended affidavit are hearsay to the extent that they would be admitted as evidence for the truth of the matter asserted within them, and not offered only for purposes of authenticating the documents within the Exhibit. See Fed. R. Evid. 801(c); Fed. R. Evid. 802.

- 50 -

The Court, therefore, will sustain in part and overrule in part Hi-Land Potato and Worley's objection to Skyline Potato and the Folson Farm Group's Exhibit 30.  The Court will admit the Kroger Co. documents in Exhibit 30 for the limited purpose of evidencing Kroger Co.'s business practices when it receives notice that a supplier wishes to change its name, but the Court will not consider the documents for the truth of the statements upon which Kroger Co. relied to create the documents.  The Court will also admit the Kroger Co. affidavits for the limited purpose of authenticating the documents.

**IT IS ORDERED** that: (i) the Plaintiff and Intervening Plaintiffs' Objections to Defendant Hi-Land Potato Company's Exhibit List, filed Oct. 12, 2012 (Doc. 302); (ii) the Defendants and Third-Party Defendants Hi-Land Potato Company, Inc.'s and Carl Worley's Objections to Defendant and Third-Party Plaintiff Tan-O-On Marketing, Inc.'s Exhibits, filed Oct. 12, 2012 (Doc. 306); and (iii) the Defendants and Third-Party Defendants Hi-Land Potato Company, Inc.'s and Carl Worley's Objections to Plaintiff and Intervening Plaintiffs' Exhibits, filed Oct. 12, 2012 (Doc. 307), are sustained in part and overruled in part as set forth in more detail above.  The Court will exclude Defendants and Third-Party Defendants Hi-Land Potato Company, Inc. and Carl Worley's Exhibit CE.  The Court will conditionally admit their Exhibits BE and BF, and will admit their Exhibits BQ-CD for the limited purpose of showing that Plaintiff Skyline Potato Company, Inc. and the Intervening Plaintiffs Folson Farm Corporation, Mart Produce Corporation, Alsum Produce Sales, Inc., Peterson Bros. River Valley Farms, Inc., and Billingsley Produce Sales, Inc. ("the Folson Farm Group") had notice of their ability to submit claims against Shannon and Shawna Casey in their bankruptcy proceedings, but not for the truth of the matter asserted within the Exhibits.  The Court will exclude Tan-O-On Marketing's Exhibits 4F, 4K, 8, 9, 14, and 18.  The Court will exclude Skyline Potato and the

Folson Farm Group's Exhibits 2, 3, 5, 16, 32, and the Kroger Co. employee's affidavit in Exhibit 30.  The Court will admit the Kroger Co. documents within Skyline Potato and the Folson Farm Group's Exhibit 30 for the limited purpose of evidencing Kroger Co.'s business practices.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James T. Burns
Heather S. Jaramillo
Patrick J. Griebel
Albuquerque Business Law, P.C.
Albuquerque New Mexico

-- and --

Justin P. Pizzonia
Johanna A. Pickel
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Justin P. Pizzonia
Gonzalez & Pizzonia LLC
Albuquerque, New Mexico

-- and --

Katy Koestner Esquivel
Meuers Law Firm, PL
Naples, Florida

      *Attorneys for Intervening Plaintiffs Folson Farm Corporation; Potandon Produce,*
        *L.L.C.; Mart Produce Corporation; Billingsley Produce Sales, Inc.; Alsum*
        *Produce, Inc.; and Peterson Bros. River Valley Farms, Inc.*

Gordon H. Rowe III
The Rowe Law Firm, P.C.

Albuquerque, New Mexico

-- and --

Henry M. Bohnhoff
Leslie McCarthy Apodaca
Melanie B. Stambaugh
Rodey Dickason Sloan Akin & Robb, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants and Third-Party Defendants Hi-Land Potato Company, Inc. and Carl Worley*

Gordon H. Rowe III
The Rowe Law Firm, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants Mark Lounsbury and Bill Metz*

Shannon Robinson
Albuquerque, New Mexico

> *Attorney for Defendants and Third-Party Plaintiffs Tan-O-On Marketing Inc., Gerald Anderson, and Julie Anderson*

Benjamin F. Feuchter
William Spencer Reid
Keleher & McLeod, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendants and Third-Party Defendants RPE, Inc. and Russell Wysocki*